UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 24-617 (TJK) |
| ) | |
| UNITED STATES IMMIGRATION ) | |
| AND CUSTOMS ENFORCEMENT, ) | |
| ) | |
| Defendant. ) | |

## DECLARATION OF FERNANDO PINEIRO

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.  I am the FOIA Director of the U.S. Immigration and Customs Enforcement ("ICE") Freedom of Information Act ("FOIA") Office. I have held this position since August 14, 2022, and I am the ICE official immediately responsible for supervising ICE responses to requests for records under the Freedom of Information Act, 5 U.S.C § 552 (the FOIA), the Privacy Act, 5 U.S.C. § 552a (the Privacy Act), and other applicable records access statutes and regulations. Prior to this position, I was the Deputy FOIA Officer of the ICE FOIA Office from December 29, 2013, to August 13, 2022, and prior to that I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties ("CRCL") at the U.S. Department of Homeland Security ("DHS"). The ICE FOIA office mailing address is 500 12th Street, S.W., STOP 5009, Washington, D.C. 20536-5009.

2.  As the FOIA Director my official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office regarding the processing of FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. In connection

1

with my official duties and responsibilities, I am familiar with ICE's procedures for responding to requests for information pursuant to the FOIA and the Privacy Act.

3.  I make this declaration in support of ICE's Motion for Summary Judgment in the above-captioned action. The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

4.  This declaration provides a description of how ICE received Plaintiff's FOIA request, how ICE searched for and processed records in response to Plaintiff's FOIA requests, and how ICE disclosed records located in response to Plaintiff's FOIA requests.

5.  In addition, in accordance with the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this declaration explains the basis for withholding portions of the requested information pursuant to FOIA Exemption (b)(5) and (b)(7)(E). **ICE's *Vaughn* Index is attached hereto as Attachment A**.

## I. PROCEDURAL HISTORY OF THE PLAINTIFF'S FOIA REQUESTS AND THE INSTANT LITIGATION

6.  This suit stems from a FOIA request Plaintiff sent to ICE on October 12, 2023. The request sought records relating to ICE's inadvertent disclosures, specifically regarding the identities of the third parties to whom ICE disclosed information regarding Plaintiff's asylum claim. **A true and complete copy of Plaintiff's FOIA Requests to ICE are attached hereto as Attachment B.**

7.  On October 18, 2023, the ICE FOIA Office acknowledged receipt of Plaintiff's FOIA request and directed Plaintiff to resubmit the FOIA request with a reasonable description of the records Plaintiff sought. The ICE FOIA Office assigned Plaintiff's FOIA request case number 2024-ICFO-01546. **A true and complete copy of ICE's October 18, 2023 letter is attached hereto as Attachment C.**

8.  On November 16, 2023, Plaintiff sent ICE an updated FOIA request.

9. On November 17, 2023, the ICE FOIA office acknowledged the receipt of Plaintiff's FOIA Request. **A true and complete copy of ICE's October 18, 2023, letter is attached hereto as Attachment D.**

10. On November 21, 2023, the ICE FOIA Office tasked ICE's Office of the Principal Legal Advisor (OPLA), Office of Enforcement and Removal Operations (ERO), Office of Professional Responsibility (OPR), Office of Information Governance and Privacy (IGP), and Office of the Chief Information Officer (OCIO) with searching for any records potentially responsive to Plaintiff's FOIA request.

11. On December 13, 2023, Plaintiff sent ICE an email to follow up on the status of Plaintiff's FOIA request. The ICE FOIA Office responded by email dated December 21, 2023 stating the "expedited decision was denied on 11/12/2023" and that ICE components have been tasked to search for responsive records. **A true and complete copy of ICE's December 21, 2023 email is attached hereto as Attachment E.**

12. On March 8, 2024, not having received a final response from ICE, Plaintiff filed a Complaint. Plaintiff also filed a Motion for a Temporary Restraining Order (TRO) on March 8, 2024.

13. On March 13, 2024, Defendant's Memorandum in Opposition to Plaintiff's Motion for a TRO was filed.

14. On March 14, 2024, the ICE FOIA Office sent Plaintiff a final response letter, releasing in part 294 pages responsive to Plaintiff's FOIA request. **A true and complete copy of the March 14, 2024 letter is attached as Exhibit F.** Plaintiff's Motion for a TRO was dismissed for mootness.

## II. ICE'S STANDARD PROCEDURE FOR INITIATING SEARCHES IN RESPONSE TO FOIA REQUESTS

15. When the ICE FOIA Office receives a FOIA request, the intake staff evaluates it to determine if it is a proper FOIA request per DHS FOIA regulation 6 C.F.R. § 5.3. Generally, a

FOIA request is considered proper and in compliance with DHS regulations if it reasonably describes the records sought and the records are under the purview of ICE.

16.     Proper FOIA requests are entered into a database known as Secure Release and assigned a case tracking number. Based upon the requestor's description of the records being sought and ICE FOIA's knowledge of the various program offices' missions, the ICE FOIA Office identifies the program office(s) likely to possess responsive records and tasks the appropriate program office(s) to conduct the necessary searches.

17.     ICE records are maintained by leadership offices and/or within ICE directorates, including but not limited to, the Office of Public Affairs, the Office of Enforcement and Removal Operations (ERO), the Office of Professional Responsibility (OPR), the ICE FOIA Office, the Office of the Director, the Office of the Principal Legal Advisor (OPLA), and the Chief Financial Officer (CFO). The program offices are typically staffed with a designated point of contact (POC) who is the primary person responsible for communications between that program office and the ICE FOIA Office. Each POC is a person with detailed knowledge about the operations of his/her respective program office.

18.     Upon receipt of a proper FOIA request, the ICE FOIA Office will identify which program offices, based upon their experience and knowledge of ICE's program offices, within ICE are reasonably likely to possess records responsive to that request, if any, and task the relevant program offices with searches. Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides the POCs within each of those program offices with a copy of the FOIA request and instructs them to conduct a search for responsive records. The POCs then review the FOIA request, along with any case-specific instructions that may have been provided and based on their experience and knowledge of their program office practices and activities, forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any. In conformity with the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of their file systems, including both paper files and electronic files, which in their judgment, based on their knowledge of the manner in which they routinely keep records, are reasonably likely to contain responsive documents. Once those searches are

completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn, provides the records to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness and the application of appropriate FOIA Exemptions.

19. ICE employees maintain records in several ways. ICE program offices use various systems to maintain records, such as investigative files, records regarding the operation of ICE programs, and administrative records. ICE employees may store electronic records on their individual computer hard drives, their program office's shared drive (if the office uses one), DVDs, CDs, and/or USB storage devices. The determination of whether or not these electronic locations must be searched in response to a particular FOIA tasking, as well as how to conduct any necessary searches, is necessarily based on the manner in which the employee maintains his/her files.

20. Additionally, all ICE employees have access to e-mail. ICE uses the Microsoft Outlook e-mail system. Each ICE employee stores his/her files in the way that works best for that particular employee. ICE employees use various methods to store their Microsoft Outlook e-mail files - some archive their files monthly, without separating by subject; others archive their e-mail by topic or by program; still others may create PST files of their emails and store them on their hard drive or shared drive.

21. Records received by the ICE FOIA Office from the program office POCs are assigned to a FOIA processor who determines whether or not the records are responsive to the FOIA request. If the records are responsive, the FOIA processor will redact information pursuant to the FOIA or Privacy Act, as appropriate, while simultaneously ensuring that all reasonably segregable non-exempt information is released.

22. Frequently, the ICE FOIA Office must coordinate between multiple program offices to ensure the program office records are properly redacted and information is correctly segregated. Once the ICE FOIA Office completes its coordination efforts and all responsive records have been processed, the ICE FOIA Office releases the responsive records to the requestor.

### III. DESCRIPTION OF PROGRAM OFFICES TASKED WITH SEARCHING FOR RECORDS IN RESPONSE TO PLAINTIFF'S FOIA REQUEST

23. ICE is the principal investigative arm of DHS and the second largest investigative agency in the federal government. Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service, ICE now employs more than 20,000 people in offices in every state and in 48 foreign countries.

24. After reviewing the FOIA request, the ICE FOIA Office determined that because of the subject matter of Plaintiff's FOIA Request, OPLA, ERO, OPR, IGP, and OCIO, were the program offices likely to have responsive records (if such records existed). Therefore, based on their subject matter expertise and knowledge of the agency record systems, the ICE FOIA Office instructed these program offices to conduct a comprehensive search for records and to provide all potentially responsive records located during that search to the ICE FOIA Office for review and processing. Please note, IGP and OPR responded to the ICE FOIA Office that they would not have responsive records. OCIO also declined to search since ERO and OPLA were tasked to search. Accordingly, and based on the information described below, all locations likely to contain records responsive to Plaintiff's FOIA Requests (to the extent that they exist within ICE's custody) were searched.

## OPLA's Search In Response to Plaintiff's FOIA Requests

25. ICE Office of the Principal Legal Advisor ("OPLA") is the largest legal program in DHS, with over 1,100 attorneys and 350 support personnel. By statute, OPLA serves as the exclusive representative of DHS in immigration removal proceedings before the Executive Office for Immigration Review, litigating all removal cases including those against criminal aliens, terrorists, and human rights abusers. OPLA also provides a full range of legal services to ICE programs and offices. OPLA provides legal advice and prudential counsel to ICE personnel on their customs, criminal, and immigration law enforcement authorities, the Freedom of Information Act and Privacy Act, ethics, legal liability under the Federal Tort Claims Act, and a range of administrative law issues, such as contract, fiscal, and employment law. OPLA represents the agency before the Merit Systems Protection Board, the Equal Employment Opportunity Commission, and the Board of Contract Appeals. OPLA attorneys provide essential support to the

Department of Justice in the prosecution of ICE cases and in the defense of ICE's authorities in federal court.

26.     On November 21, 2023, the ICE FOIA Office tasked OPLA to conduct a comprehensive search for records and to provide all records located during that search to the ICE FOIA Office for review and processing.

27.     In response to the FOIA tasking, the OPLA FOIA POC reviewed the substance of the FOIA request and relying upon her subject matter expertise and knowledge of OPLA's activities, determined that three OPLA divisions, Field Legal Operations (FLO); Immigration and Law Practice Division (ILPD); and Enforcement and Removal Operations Law Division (EROLD), should be tasked to search for potentially responsive records.

28.     FLO is OPLA's largest component and includes the 25 field locations across the United States. Each OPLA field location is led by a Chief Counsel, who guides DHS's advocacy before the local immigration courts and the Board of Immigration Appeals. FLO also provides a full suite of legal services, including customs law and employment law advice, to the local ERO Field Office and HSI Office of the Special Agent in Charge.  FLO was tasked to search for records because the inadvertent disclosure of Plaintiff's information was made by the field. Between November 27 and December 7, 2023, six Assistant Chef Counsels (ACC) from OPLA New York Field Office and OPLA Buffalo (Batavia) Field Office, conducted manual searches of their computer files and Microsoft Outlook e-mail accounts, by using the search terms, Mr. Doe's name and A-Number. ACCs are responsible for representing the agency in immigration court and immigration proceedings. In addition, one Deputy Chief Counsel (DCC), OPLA New York Field Office, and one Chief Counsel, OPLA New York Field Office, conducted searches of their computer files and Outlook email accounts by using the search terms, Mr. Doe's name and A-Number.  All potentially responsive records collected by FLO were returned to the OPLA FOIA POC.

29.     The mission of ILPD is to promote integrity in immigration law by zealously advocating on ICE's behalf in appellate proceedings before the BIA and the Attorney General, ensuring consistency in OPLA's litigating positions before the nation's immigration courts,

7

guiding the development of federal court decisional law, and providing expert counsel on issues of substantive immigration law and protection law matters. Between November 27 and December 7, 2023, two Associate Legal Advisors (ALA) conducted manual searches of their computer files and Microsoft Outlook e-mail accounts, by using the search terms, Mr. Doe's name and A-Number. All potentially responsive records collected by ILPD were returned to the OPLA FOIA POC.

30. EROLD provides timely, accurate, and comprehensive legal advice and operational guidance to agency personnel in furtherance of ICE's immigration enforcement and public safety missions. On November 21, 2023, an Associate Legal Advisors (ALA) conducted a manual search of their computer files and Microsoft Outlook e-mail account, by using the search terms, Mr. Doe's name and A-Number. All potentially responsive records collected by EROLD were returned to the OPLA FOIA POC.

31. The eleven OPLA attorneys located approximately 1,453 pages of potentially responsive records, which were provided by the OPLA FOIA POC to ICE FOIA on January 5, 2024. The responsive records were then produced to Plaintiff in the final production dated March 14, 2024.

### ERO's Search In Response to Plaintiff's FOIA Requests

32. ERO oversees programs and conducts operations to identify and apprehend removable aliens, to detain these individuals when necessary, and to remove illegal aliens from the United States. ERO prioritizes the apprehension, arrest, and removal of convicted criminals, those who pose a threat to national security, fugitives, recent border entrants, and aliens who thwart immigration controls. ERO manages all logistical aspects of the removal process, including domestic transportation, detention, alternatives to detention programs, bond management, and supervised release.

33. When ERO receives a FOIA tasking from the ICE FOIA Office, the request is submitted to ERO's Information Disclosure Unit (IDU). A POC in IDU reviews the substance of the request and based on the subject matter expertise and knowledge of the component offices' activities within ERO, IDU determines whether it can search for records, or whether it is necessary

to forward the FOIA request to specific individuals and component offices to conduct searches of their files systems which in their judgement, based on their knowledge of the manner in which they routinely keep records, would be reasonably likely to have responsive records, if any.

34. Upon receipt of the FOIA request in this case and based on the nature of the Plaintiff's FOIA Request, the ERO FOIA POC determined that the ERO Buffalo Field Office should be tasked to conduct a search. On December 5, 2023, an Assistant Field Office Director (AFOD) who oversees ERO operations at the Buffalo Federal Detention Facility in the ERO Buffalo Field Office conducted a search of their Microsoft Outlook e-mail account using the search terms, Mr. Doe's name and A-Number.

35. In addition, on December 11, 2023, an AFOD in the ERO New York City Field Office conducted a search of their computer files using search terms, Mr. Doe's name and A-Number. The ERO New York City Field Office AFOD also conducted a search of the Enforce Alien Removal Module (EARM) database using Mr. Doe's name. EARM is an application that supports ICE's processing and removal of noncitizens from the US and is used primarily as a case management tool to track the status of removal proceedings. The two AFODs located approximately 160 pages of potentially responsive records, which were then produced to Plaintiff in the final production dated March 14, 2024.

## ORGANIZATION OF THE *VAUGHN* INDEX

36. Pursuant to the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), a *Vaughn* Index accompanies this declaration; the *Vaughn* Index provides a description of each redaction and the corresponding FOIA exemption being applied.

37. The *Vaughn* index is in a table format. The first column contains the page numbers of the responsive records. The second column describes the category of withholdings taken on the documents (full or partial). The third column describes the underlying records and provides justifications for the asserted exemptions. The fourth column describes the redaction codes, which are citations to the sections of the FOIA Exemptions.

38.     The *Vaughn* index encompasses the responsive records found by the program offices. The 294 pages of records were withheld from Plaintiff in part pursuant to FOIA Exemption 5, 6, 7(C), and 7(E). Plaintiff has challenged the Exemption 5 and 7(E) withholdings. A completed description of these documents, and the bases for the withholdings of information in them, is detailed in ICE's Vaughn index. The Vaughn index primarily encompasses email exchanges between OPLA attorneys and the ERO Buffalo Field Office as well as draft documents.

## IV. DESCRIPTION OF FOIA WITHHOLDINGS APPLIED TO RECORDS PROVIDED TO PLAINTIFFS

### FOIA Exemption 5 U.S.C. § 552(b)(5) Threshold

39.     Exemption 5 of the FOIA allows the withholding of inter- or intra-agency records that are normally privileged in the civil discovery context. Pursuant to Exemption (b)(5), the three most frequently invoked privileges are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege.

40.     ICE withheld internal discussions and deliberations pertaining to the inadvertent disclosure of Plaintiff's information. These discussions occurred between OPLA attorneys, as well as between OPLA attorneys and ICE ERO, wherein the OPLA and ERO employees make recommendations, seek advice as to whether the disclosure was in violation of 8 C.F.R. § 208.6, and discuss potential actions that should be taken in response to the disclosure. These discussions are protected by the deliberative process privilege.

41.     The deliberative process privilege protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel. This would result in a chilling effect on intra- and inter-agency communications. ICE employees must be able to discuss proposed agency action freely. Further, if draft, un-finalized responses to public inquiries and draft information regarding agency policies and enforcement actions were released, the public could potentially become confused regarding ICE's mission and enforcement

activities, as well as what positions have actually been adopted by the agency. The types of documents here include draft documents and emails containing pre-decisional opinions of agency employees deliberating on what action the agency should take.

42.     In addition to the deliberative process privilege, ICE withheld emails between OPLA HQ and FLO attorneys and between OPLA and ERO under the attorney-client privilege. This privilege protects the confidential communications between an attorney and his/her client relating to a legal matter for professional advice. The types of documents withheld here under the attorney-client privilege are email exchanges between ICE attorneys and other ICE components where ICE attorneys provide confidential legal advice to their clients.

### FOIA Exemption 5 U.S.C. § 552(b)(7) Threshold

43.     5 U.S.C. § 552(b)(7) establishes a threshold requirement that, to withhold information on the basis of any of its subparts, the records or information must be compiled for law enforcement purposes.

44.     The information for which the ICE FOIA Office asserted Exemption (b)(7) satisfies this threshold requirement. Pursuant to the Immigration and Nationality Act, codified under Title8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. See 8 U.S.C. § 1103. ICE is the largest investigative arm of DHS and is responsible for identifying and eliminating vulnerabilities within the nation's borders. ICE is tasked with preventing any activities that threaten national security and public safety by investigating the people, money, and materials that support illegal enterprises.

45.     The records and information at issue in this matter pertain to ICE's obligation to accurately portray the work it is doing to further its mission and to allow its employees to conduct work in furtherance of the ICE mission. The records and information at issue in this matter pertain to ICE's obligation to enforce the immigration laws of the United States by investigating non-U.S. individuals who may be present in the United States illegally, including records of interviews, arrests, bookings, detentions, removals, other related investigations, and investigations of allegations of misconduct.  In keeping records related to law enforcement techniques, ICE is acting

in the interest of its employees who are working to ensure that these policies are enacted, that they are fair and that they provide the greatest level of safety to the public and to ICE employees. The records and information located within this internal database in response to Plaintiffs' FOIA requests were collected, compiled, accessed, and queried for by ICE law enforcement officers advancing law enforcement missions. Therefore, the records and information located in response to the FOIA requests were compiled for law enforcement purposes and meet the threshold requirement of FOIA Exemption 7.

### Exemption 5 U.S.C. § 552(b)(7)(E)

46.     FOIA Exemption 7(E), 5 U.S.C. § 552(b)(7)(A), protects from disclosure records or information compiled for law enforcement purposes, that would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclosure guidelines for law enforcement investigations or prosecutions is such disclosure could reasonably be expected to risk circumvention of the law.

47.     Here, ICE has applied Exemption 7(E) to law enforcement sensitive information, specifically law enforcement codes contained in screenshots of databases.  The information redacted is a screenshot of the EARM database, which is a software application that supports ICE's processing and removal of noncitizens from the United States and used primarily as a case management tool to track the status of removal proceedings. It includes specific information regarding a noncitizen's detention and removal, including, but not limited to, specifics about bed location, transfers, and travel times.

48.     This type of information is utilized for law enforcement purposes as it is in furtherance of ICE's obligation to enforce the immigration laws of the United States by conducting removal operations and ensuring that these operations are not hindered by actions of bad actors who may obtain access to confidential law enforcement sensitive information and intelligence.

49. The release of this information could reveal techniques and/or procedures for law enforcement investigations or prosecutions or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law. Disclosure of this information could assist third parties in deciphering the meanings of the codes and/or, with ICE-specific intranet URLs, could enable an individual to navigate, alter, and/or manipulate law enforcement databases and email systems were they to gain access to the system.

50. This information, used for the purpose of indexing, storing, locating, and retrieving law enforcement sensitive information is not commonly known and could also be used to decipher the meaning of codes, navigate within the law enforcement system, and compromise the integrity of the data either by allowing for the deletion or alteration of information. Disclosure of these techniques and practices in navigating the databases could assist bad actor seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE during enforcement operations by granting improper access to the proprietary EARM database.

51. Further, how law enforcement officers access databases are law enforcement techniques and procedures that are not commonly known. The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.

## V. SEGREGABILITY

52. 5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

53. A line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.

54. With respect to the records that were released in part, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released.

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.

Signed this ____ day of August 2024.

_____

Fernando Pineiro, FOIA Director
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009