## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

JOHN DOE, proceeding under a pseudonym,
    *Plaintiff,*

    v.

UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT,
    *Defendant*

Civ. No. 24-617 (TJK)

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................... 1

BACKGROUND ........................................................................................................................ 2

   I.  FOIA and Summary Judgment Standard of Review......................................................... 2

  II.  ICE's Unlawful Disclosure of Plaintiff's Asylum Application and Plaintiff's FOIA
     Request……………………………………………………………………………………2

 III.  After Submitting Its Motion for Summary Judgment, ICE Released 42 Records to Plaintiff
     Pursuant to a "Re-Review" of Exemptions, Including an Email Showing Contempt for
     Plaintiff's Counsel. ....................................................................................................... 5

ARGUMENT ............................................................................................................................ 7

   I.  ICE Has Not Met Its Burden to Show That Its Searches Were Adequate......................... 7

  II.  ICE Has Not Met Its Burden to Show That Its Remaining Exemption 5 Withholdings Are
     Justified ...................................................................................................................... 9

     A.  ICE has not adequately described responsive records as predecisional and deliberative
       ……………………………………………………………………………………….9

     B.  ICE has not adequately shown that responsive records are protected by attorney-client
       privilege. ................................................................................................................ 12

     C.  ICE has failed to show that it reasonably foresees harm to a protected interest from
       disclosure of the remaining withheld records. ........................................................... 15

 III.  ICE Has Not Met Its Burden on Segregability ................................................................ 20

CONCLUSION........................................................................................................................ 23

# TABLE OF AUTHORITIES

**Cases**

*Access Reports v. United States Dep't of Justice*,
    926 F.2d 1192 (D.C. Cir. 1991)....................................................................... 9, 11

*Am. Civ. Liberties Union  v. United States Dep't of Homeland Sec.*,
    738 F. Supp. 3d 93 (D.D.C. 2010) ...................................................................... 13

*Amer. Imm. Council v. United States Customs and Border Prot.*,
    590 F. Supp. 3d 306 (D.D.C. 2022) .................................................................... 12

*Ancient Coin Collectors Guild v. United States Dep't of State*,
    641 F.3d 504, 514 (D.C.Cir.2011)........................................................................ 7

*Armstrong v. Exec. Office of the President*,
    97 F.3d 575 (D.C. Cir. 1996) ....................................................................... 20, 22

*Arthur Andersen & Co. v. Internal Revenue Serv.*,
    679 F.2d 254 (D.C. Cir. 1982) ............................................................................ 12

*Brinton v. Dep't of State*,
    636 F.2d 600 (D.C. Cir. 1980) ............................................................................ 13

*Buzzfeed, Inc. v. Dep't of Homeland Sec.*,
    No. 19 Civ. 3295 (TJK), 2022 WL 3976099 (D.D.C. Sept. 1, 2022) .............................. 17

*Campaign Legal Ctr. v. United States Dep't of Justice*,
    34 F.4th 14 (D.C. Cir. 2022) ................................................................................ 9

*Citizens for Resp. & Ethics in Wash. v. United States Dep't of Justice*,
    45 F.4th 963 (D.C. Cir. 2022) ............................................................................... 9

*Citizens for Resp. & Ethics in Wash.  v. United States Dep't of Justice*,
    538 F. Sup. 3d 124 (D.D.C. 2021) (D.C. Cir. 2022) ....................................................... 13

*Citizens for Resp. & Ethics in Wash. v. United States Dep't of Justice*,
    No. 23 Civ. 262 (JEB), 2024 WL 3858560 (D.D.C. Aug. 19, 2024)............................... 16

*Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) .............................................................. 9, 11, 14

*Competitive Enter. Inst. v. United Stats Enviro. Prot. Agency*,
    232 F. Supp. 3d 172 (D.D.C. 2017) ...................................................................... 2

*Ctr. for Investigative Reporting v. United States Customs and Border Prot.*,
    436 F. Supp. 3d 90 (D.D.C. 2019) ........................................................... 16, 17, 20

*Dalal v. United States Dep't of Justice,*
    643 F. Supp. 3d 33 (D.D.C. 2022) ............................................................................... 9, 11

*Heartland Alliance for Human Needs and Human Rights v. United States Dep't of Homeland
    Sec.,*
    291 F. Supp. 3d 69 (D.D.C. 2018) ..................................................................................... 10

*Hornbeck Offshore Transp., LLC v. United States Coast Guard,*
    No. 04 Civ. 1724 (CKK), 2006 WL 696053 (D.D.C. March 20, 2006) ......................... 14

*Judicial Watch Inc. v. United States Dep't of Justice,*
    No. 17 Civ. 832 (CKK), 2019 WL 4644029 (D.D.C. Sept. 24, 2019) ............................ 16

*Judicial Watch, Inc. v. United States Postal Serv.,*
    297 F. Supp. 2d 252 (D.D.C. 2004) .................................................................................. 10

*McKinley v. Fed. Deposit Ins. Corp.,*
    744 F. Supp. 2d 128 (D.D.C. 2010) .................................................................................... 9

*Mead Data Ctr. v. United States Dep't of the Air Force,*
    566 F.2d 242 (D.C. Cir. 1977) ....................................................................... 13, 20, 21, 22

*Nat'l Archives and Records Admin. v. Favish,*
    541 U.S. 157 (2004) ............................................................................................................ 7

*Oglesby v. United States Dep't of the Army,*
    920 F.2d 57 (D.C. Cir. 1990) .............................................................................................. 7

*Petroleum Info. Corp. v. United States Dep't of the Interior,*
    976 F.2d 1429 (D.C. Cir. 1992) .......................................................................................... 9

*Prop. of the People, Inc. v. Off. of Mgm't & Budget,*
    330 F. Supp. 3d 373 (D.D.C. 2018) .................................................................................... 2

*Pub. Emps. for Env't Resp. v. Enviro. Protec. Agency,*
    288 F. Supp. 3d 15 (D.D.C. 2017) .................................................................................... 22

*Reporters Comm. for the Freedom of the Press v. Fed. Bureau of Investigation,*
    3 F.4th 350 (D.C. Cir. 2021) ............................................................................................ 16

*Rosenberg v. United States Dep't of Defense,*
    442 F. Supp. 3d 240 (D.D.C. 2020) ...................................................................... 16, 17, 18

*Savage v. Dep't of Justice,*
    No. 22 Civ. 2477 (JEB), 2024 WL 2880438 (D.D.C. June 7, 2024) ............................... 18

*Schlefer v. United States,*
    702 F.2d 233 (D.C Cir. 1983) ........................................................................................... 14

*Sierra Club v. United States Fish and Wildlife Serv.*,
    523 F. Supp. 3d 24 (D.D.C. 2021) ................................................................... 20

*Students Against Genocide v. United States Dep't of State*,
    257 F.3d 828 (D.C. Cir. 2001) ........................................................................ 18

*Summers v. United States Dep't of Justice*,
    140 F.3d 1077 (D.C. Cir. 1998) ...................................................................... 20

*Sussman v. United States Marshals Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007)....................................................................... 20

*Tax Analysts v. Internal Revenue Serv.*,
    117 F.3d 607(D.C. Cir. 1997)..................................................................... 12, 14

*The Wilderness Soc'y v. United States Dep't of the Interior*,
    344 F. Supp. 2d 1 (D.D.C 2004) .................................................................... 13

*Urb. Air Initiative v. Enviro. Protec. Agency*,
    271 F. Supp. 3d 241(D.D.C. 2017) ................................................................... 8

*Valencia-Lucena v. United States Coast Guard*,
    180 F.3d 321 (D.C. Cir. 1999) ......................................................................... 8

**Other Authorities**

H.R. Rep. No. 114-391 ....................................................................................... 19

Lindsay Nash, *Deportation Arrest Warrants*, 73 STANFORD L. REV. 433 (2021) ......................... 7

S. Rep. No. 114-4 (2015) .................................................................................... 19

**Regulations**

8 C.F.R. § 208.6 ...................................................................................... 3, 11, 14

## PRELIMINARY STATEMENT

This Freedom of Information Act ("FOIA") litigation arises because Defendant ICE unlawfully disclosed confidential information related to Plaintiff John Doe's asylum application and has since stonewalled his efforts to learn about the nature and sequence of this violation of his privacy rights. After ICE failed to respond to his FOIA request, Mr. Doe brought suit seeking responsive records ahead of an immigration hearing at which information about the disclosure would be critical to his claim for relief. After Mr. Doe sought a temporary restraining order, ICE ultimately produced responsive records. But ICE withheld the bulk of those records, consisting of emails and other communications that ICE employees exchanged after Mr. Doe's counsel alerted the agency to the unlawful disclosure, primarily pursuant to FOIA's Exemption 5.[1]

After filing its motion for summary judgment, ICE backtracked on a large number of those withholdings, sending Mr. Doe a supplemental production in which it released new portions of 42 responsive records. Among them was an email in which an ICE employee disparages Mr. Doe's attorney and baselessly offers his or her opinion that the attorney's report of the unlawful disclosure was false. ICE did not explain how the records it suddenly disclosed differ from those it continues to withhold, even though the similarity in content and form is striking.

ICE is not entitled to summary judgment. *First*, ICE's search is not adequate. An agency subdivision that manages third-party disclosures and that appears frequently in the responsive records produced did not conduct a search. *Second*, ICE does not specify a decisional process to which withheld records relate and therefore does not adequately invoke the deliberative process

---

[1] Mr. Doe does not challenge ICE's remaining withholdings pursuant to Exemption 7(E)..

privilege. *Third*, ICE does not show that communications from agency attorneys were not already disclosed to Plaintiff or that they were based on confidential information from agency "clients." *Fourth*, ICE does not show foreseeable harm, particularly since it does not account for the similarity between the records it produced in its supplemental production and those it continues to withhold. *Fifth*, ICE has not conducted a sufficient segregability analysis.

The Court should deny ICE's motion for summary judgment and grant Mr. Doe's cross-motion for summary judgment.

## BACKGROUND

### I.      FOIA and Summary Judgment Standard of Review

ICE is not entitled to summary judgment unless it carries its burden to show that its "search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Competitive Enter. Inst. v. United Stats Enviro. Prot. Agency*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017). This burden "does not shift even when the requester files a cross-motion for summary judgment." *Prop. of the People, Inc. v. Off. of Mgm't & Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (quotation and citation omitted); *see also id.* (stating that the agency "has the onus of proving that the documents are exempt from disclosure, while the burden upon the requester is merely to establish the absence of material factual issues."). As detailed below, ICE has not met its burden.

### II.     ICE's Unlawful Disclosure of Plaintiff's Asylum Application and Plaintiff's FOIA request

As detailed in the Complaint, Plaintiff is an Indian national who has been active in Sikh political activities that the Indian government is actively repressing both at home and abroad.

Compl. ¶¶ 12-14. Plaintiff, who remains detained in ICE's custody, is seeking asylum because he has experienced threats and physical harm and fears future persecution and torture on account of his involvement in Sikh political activities and his relationship to family members also persecuted for their alleged Sikh political activities, including two who are currently incarcerated in India. Id.

In May 2023, ICE unlawfully disclosed documents relating to Plaintiff's claim for asylum to at least one third party, the Nassau County District Attorney's Office. *Id*. ¶19. The records subsequently became part of a public record when they were filed in New York State court. *Id*. ¶ 22. On September 18, 2023, ICE itself acknowledged that it unlawfully disclosed documents in violation of 8 C.F.R. § 208.6 related to Plaintiff's claim for asylum to at least one third party in May 2023. *Id*. ¶ 23; Ex. A, Email from ICE to Mr. Doe's Immigration Counsel, Sept. 18, 2023. This regulation protects the confidentiality of asylum applications and related documents. *See* 8 C.F.R. § 208.6; Compl. ¶ 16. It is specifically intended to safeguard information that could subject asylum claimants to retaliatory action if disclosed. *Id*. ¶ 17. Following ICE's acknowledgment of the disclosure, ICE and Mr. Doe jointly moved the Board of Immigration Appeals ("BIA") to remand his immigration proceedings to the Immigration Court for further consideration of his applications for immigration relief. Ex. B, Joint Motion to Remand, Oct. 10, 2023.

On October 12, 2023, Plaintiff filed a FOIA request seeking records related to this unlawful disclosure. *Id*. ¶ 26, 27; ECF No. 2-3, FOIA Request. Plaintiff also requested expedited processing based on the imminent threat to his and his family's physical safety and the loss of his substantial due process rights. *Id*. ¶¶ 29-31. Plaintiff brought this action because ICE failed to respond to his FOIA request in violation of FOIA and erroneously denied his request for expedited processing. *Id*. ¶¶ 40-42.

On March 14, 2024, after Mr. Doe filed a motion for a temporary restraining order, ECF No. 8, due to his imminent immigration hearing, ICE produced 294 pages of responsive records. The records consisted primarily of email exchanges between employees of several ICE subdivisions—the Office of the Principal Legal Advisor ("OPLA"), the Immigration Law and Practice Division ("ILPD") (itself a subdivision of OPLA), Enforcement and Removal Operations ("ERO"), and the Government Information Law Division ("GILD"). The production also included several sample or draft "clawback letters" (notifications to parties to whom confidential information has been disclosed), notification letters to attorneys, and correspondence between ICE and the Nassau County District Attorney's Office—both from the time of the disclosure itself (*i.e.*, May 2023) *and* after Mr. Doe notified ICE of the disclosure (*i.e.*, September 2023).

The large majority of the contents of emails and other records produced were redacted pursuant to FOIA's Exemption 5 and offered few answers to the questions that prompted counsel to submit the FOIA on his behalf: How had the disclosure occurred? To whom did ICE disclose his asylum application? What steps did ICE take to remedy the violation?

After conferring with opposing counsel, Mr. Doe produced a list of records and withholdings to be challenged through summary judgment briefing. Mr. Doe chose not to challenge communications between Brooklyn Defender Services and ICE, to which counsel has access, or that appeared to concern scheduling or other primarily administrative matters.

In its summary judgment submissions, ICE explained that two subdivisions—OPLA and ERO—had conducted searches pursuant to the FOIA request. *See* ECF No. 18-3, Decl. of Fernando Pineiro ("Pineiro Decl.") ¶ 24. OPLA's search was conducted by employees of (1) the Field Legal Operations ("FLO") divisions of OPLA's New York and Buffalo Field Offices; (2) of ILPD; and (3) of the Enforcement and Removal Operations Law Division ("EROLD"). *Id.* ¶¶ 27, 28, 29.

ERO's search was conducted by employees of ERO's Buffalo and New York Field Offices. *Id.* ¶¶ 34, 35. ICE stated that, pursuant to FOIA's Exemption 5, it was withholding "internal discussions and deliberations pertaining to the inadvertent disclosure of Plaintiff's information" under the deliberative process privilege and "emails between OPLA HQ and FLO attorneys and between OPLA and ERO under the attorney-client privilege." *Id.* ¶¶ 40, 42.

ICE's *Vaughn* index indicated that the responsive records consisted of correspondence about the nature and legality of the disclosure, correspondence about the statutory authority for Mr. Doe's detention, records related to the joint motion to remand Mr. Doe's immigration proceedings, and records related to the "clawback" letter. *See generally* ECF No. 18-4, *Vaughn* Index.

### III.    After Submitting Its Motion for Summary Judgment, ICE Released 42 Records to Plaintiff Pursuant to a "Re-Review" of Exemptions, Including an Email Showing Contempt for Plaintiff's Counsel.

On September 9, 2024, Mr. Doe's counsel received a notification that ICE had uploaded to his FOIA portal a Supplemental Production consisting of portions of 42 records. The cover letter attached to the Supplemental Production stated that

> ICE re-reviewed the records identified in your spreadsheet entitled, "Doe v ICE_24-617_Plaintiff's List of Challenges" to determine if there was additional, non-exempt information that could be released. ICE completed its review and determined that it will make a discretionary release of portions of 42 pages where additional information can be released that was previously withheld under FOIA Exemptions (b)(5) and (b)(7)(E), as identified in ICE's Vaughn Index, Exhibit A of the Declaration of Fernando Pineiro.

*See* Ex. C, Suppl. Production Ltr. Notably, ICE did not make clear whether the Supplemental Production contained exempt material that it was nonetheless voluntarily disclosing or *non*-exempt material that should previously have been disclosed and was identified through ICE's re-review.

The Supplemental Production is not mentioned in ICE's Statement of Material Facts, its Memorandum of Law, or the supporting Declaration of Officer Pineiro. In fact, in its Statement of Material Facts, ICE states erroneously that "all responsive, non-exempt records were provided to Plaintiff in the final production of March 14, 2024." *See* ECF No. 18-1, Def.'s Statement of Material Facts ¶ 19. Director Pineiro similarly twice describes the March 14 production as "the final production." *See* Pineiro Decl. ¶¶ 31, 35. And the Memorandum of Law also repeats that "all responsive, non-exempt records were provided to Plaintiff in the final production of March 14, 2024." *See* ECF No. 18-2, Def.'s Memo. of Law at 3. The only notice to Mr. Doe that the Supplemental Production was forthcoming were statements in ICE's *Vaughn* Index, contradicting ICE's other submissions, that "[o]n further consideration, ICE no longer claims Exemption 5 as to the information withheld in the body of this email and will process it for release." *See generally Vaughn* Index.

As described in greater detail *infra*, the records disclosed in the Supplemental Production are largely difficult to distinguish—in terms of content, participants, and place in decisional processes—from those ICE continues to withhold.

Among the records produced was an email in which an ERO staff member crudely—and falsely—disparages Mr. Doe's counsel, opining that her report of the illegal disclosure of Mr. Doe's asylum information "was apparently yet another BS allegation by the hug-a-thugs, not an internal issue." *See* Ex. D, Suppl. Production at 38; *Vaughn* Index at 11, Doc. No. 40/L65. Although the FOIA request was geared towards learning about the unlawful disclosure, the email shed unexpected light on unprofessional, biased conduct[2] within ICE's legal operations. *Cf. Nat'l*

---

[2] ICE's Employee Code of Conduct requires employees to "conduct themselves in a manner that dos not adversely reflect on ICE; . . . cause embarrassment to the agency; or cause the public or ICE to question the reliability, judgment, or trustworthiness of its employes." *See* ICE, Employee Code of Conduct § 2 (Aug.

*Archives and Records Admin. v. Favish*, 541 U.S. 157, 171-72 (2004) (describing FOIA's purpose of enabling "citizens to know what their Government is up to" as "a structural necessity in a real democracy" that requires "no preconceived idea of the uses the data might serve.") (quotation and citation omitted). The contemptuous and dismissive attitude was especially troubling because ICE is both jailer (ERO) and prosecutor (OPLA) to Mr. Doe, meaning that the people communicating in the email likely wield exceptional power over Mr. Doe's Fifth Amendment rights to liberty and due process. *See, e.g.*, Lindsay Nash, *Deportation Arrest Warrants*, 73 STANFORD L. REV. 433, 457-58 (2021) (describing ICE's exceptional role as "police, jailer, and prosecutor" in immigration proceedings).

Plaintiff does not know if any other withheld records contain similar inappropriate statements.

## ARGUMENT

### I.    ICE Has Not Met Its Burden to Show That Its Searches Were Adequate

ICE has not met its burden to show that its searches were adequate. FOIA requires ICE to "demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. United States Dep't of State*, 641 F.3d 504, 514 (D.C.Cir.2011) (quotation and citation omitted). An agency "cannot limit its search to only [some] record system[s] if there are others that are likely to turn up the information requested." *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The agency must "at the very least . . . explain in its affidavit that no other record system was likely to produce

---

7, 2012), https://www.ice.gov/doclib/foia/dro_policy_memos/employee-code-of-conduct.pdf; *see also id*. § 5.4 ("ICE employees must be professional, polite, respectful, considerate, helpful, and patient in all official activities that involve contact with fellow workers or members of the public, even in the face of considerable provocation.").

responsive documents." *Id*. The agency must also "follow through on obvious leads to discover requested documents." *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999).

ICE's search is inadequate because the Government Information Law Division ("GILD"), one of the subdivisions that appears most frequently in responsive records and whose mission includes privacy-related issues, did not conduct a search. *See* Pineiro Decl. ¶ 27 (listing OPLA subdivisions that conducted a search). While Director Pineiro indicates that ICE FOIA identified the "program offices likely to have responsive records (if such records existed)," *id*. ¶ 24, he does not account for the lack of a search by GILD employees, nor does he state that no other record system was likely to product responsive records. *Cf. Urb. Air Initiative v. Enviro. Protec. Agency*, 271 F. Supp. 3d 241, 256 (D.D.C. 2017) ("The Court has additional concerns with the adequacy of [the agency's] search. The declaration asserts that ten custodians were 'reasonably likely to be in possession of responsive records' . . . but it does not aver that no other custodians were likely to possess responsive documents . . . . Without this information, the Court cannot conclude that [the] search was adequate."). GILD's frequent appearance in responsive records was an obvious lead that ICE failed to follow. Moreover, GILD's responsibilities clearly touch on the subject of Mr. Doe's FOIA request. GILD "handles a vast array of . . . disclosure-related issues, including federal, state, and foreign request for information [and] privacy issues." *See* ICE, Fiscal Year 2025: Congressional      Justification      at      97,      https://www.dhs.gov/sites/default/files/2024-03/2024_0308_us_immigration_and_customs_enforcement.pdf. Either based on prior knowledge of GILD's role in disclosures and privacy-related issues *or* upon discovering GILD's intimate participation in responding to Mr. Doe's report of the unlawful disclosure, ICE should have instructed GILD to conduct a search.

II.   **ICE Has Not Met Its Burden to Show That Its Remaining Exemption 5 Withholdings Are Justified**

    A.   **ICE has not adequately described responsive records as predecisional and deliberative.**

ICE has not met its burden to justify its withholdings pursuant to the deliberative process privilege. The deliberative process privilege protects materials that "bear on the formulation or exercise of agency policy-oriented *judgment*." *Petroleum Info. Corp. v. United States Dep't of the Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992) (emphasis in original). Records are exempt from disclosure only if they are both "predecisional" and "deliberative." *Access Reports v. United States Dep't of Justice*, 926 F.2d 1192, 1994 (D.C. Cir. 1991). A record "is predecisional if it is generated 'before the adoption of an agency policy." *McKinley v. Fed. Deposit Ins. Corp.*, 744 F. Supp. 2d 128, 138 (D.D.C. 2010) (quotation and citation omitted). A record is "deliberative" if it reflects "the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980).

To properly withhold records under the deliberative process privilege, ICE "has the burden of establishing what deliberative process is involved, and the role played by the documents in the course of that process." *Id*. at 868.  Similarly, as this Court has noted, "'[a]ssessing whether a record is pre-decisional requires identifying the decision (and the associated decisional process) to which the record pertains.'" *Dalal v. United States Dep't of Justice*, 643 F. Supp. 3d 33, 61 (D.D.C. 2022) (quoting *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Justice*, 45 F.4th 963, 972 (D.C. Cir. 2022). And, as the Court has also noted, "an agency invoking the deliberative process privilege should explain 'the roles of the document drafters and recipients.'" *Id*. (quoting *Campaign Legal Ctr. v. United States Dep't of Justice*, 34 F.4th 14, 23 (D.C. Cir. 2022); *see also Heartland Alliance for Human Needs and Human Rights v. United States Dep't of Homeland Sec.*,

291 F. Supp. 3d 69, 80 (D.D.C. 2018) (noting that merely stating that "are intended to be used to make a final policy decision does not provide the necessary detail for the Court to determine the nature of the deliberative process, function and significance of the documents, and nature of the authority vested in the author and recipient.").

ICE has failed to meet its burden because it has not identified a decision associated with the records it seeks to withhold. In 13 cases, for example, ICE simply states that the record "includes [an employee's] legal analysis and preliminary conclusions about whether the inadvertent disclosure violates 8 CFR § 208.6," or a similar formulation indicating that the record discusses the 8 C.F.R. § 208.6 and the possibility that a violation occurred. *See Vaughn* Index Doc. Nos. 54-55/L58; 51/L61; 51-53/L60; 73/L56; 102-103/L43; 124-125/L40; 125-126/L39; 127-128/L38; 128/L37; 147-149/L18; 150-151/L17; 152-153/L16; 153-155/L14.  For 7 other records, ICE states that the record "includes [an employee's] opinions regarding the legal authority for detention of Plaintiff and discusses alternative arguments," or a variation thereof. *See Vaughn* Index Doc. Nos. 133/L29; 9/L75; 10-9/L74; 10/L73; 10-11/L72; 134-135/L27; 135-136/L26.

These descriptions do not place the relevant records in any clear decisional process, such as a specific decision or action to be taken in response to the disclosure. *See, e.g.*, *Judicial Watch, Inc. v. United States Postal Serv.*, 297 F. Supp. 2d 252, 264 (D.D.C. 2004) (finding that the description "'actions taken or proposed in response to the discovery of anthrax in the mail'" did "not identify *specific* final decisions or decisionmaking processes to which the documents contributed.") (emphasis in original). Even if ICE's acknowledgment of the unlawful disclosure and its offer of a joint motion to remand constitute final decisions, ICE has not met its burden to show a sufficient connection between the records and those decisions. Similarly, ICE's descriptions do not indicate that the records "discuss the wisdom or merits of a particular agency policy, or

recommend new agency policy." *Coastal States*, 617 F.2d at 869. If anything, the descriptions suggest that the records merely "explain and apply established policy," *id.*, and it is unclear if or to what extent the records go beyond merely communicating agency policy vis-à-vis violations of 8 C.F.R. § 208.6. The records further fail to identify the decisionmaking authority of the recipients and senders. Because of these deficiencies, ICE has not met its burden.

This Court has rejected descriptions from that, like those provided by ICE here, indicated that agency personnel were engaged in an evaluation of facts regarding a particular question before them, but did not specify the records' role in a specific decisional process. *See Dalal*, 643 F. Supp. 3d at 61 (stating that the description "'preliminary opinions, evaluations, and comments of [Newark Field Office] Special Agents pertaining to the criminal proceedings' against Dalal" is too "nebulous" to identify "what decision or decisional process is at issue.") (citation omitted). The Court also noted that, as here, the agency had not explained the "'decisionmaking authority'" of each party to a communication and provide little clarity as to the communication's "'binding effect on the recipient.'" *Id.* (quoting *Access Reports*, 926 F.2d at 1995); *see also id.* ("Both Special Agents and attorneys within DOJ's Office of General Counsel appear to have been involved—but the FBI does not explain their roles.") (citation omitted).

The same is true for several other emails. *See Vaughn* Index Doc. Nos. 130/L34; 145-146/L20, 144-145/L21. One email is described as a recommended "response to Plaintiff's release request." Doc. No. 130/L4. Another is described as containing a question "regarding whether there are additional legal obligations that OPLA NYC may need to take as a result of the inadvertent disclosure," *Vaughn* Index Doc. No. 145-146/L20, while a third is described as containing an ILPD's attorneys "respon[se] to the specific questions directed towards them in this email communication as subject-matter specialist advisors at OPLA HQ." *Vaughn* Index Doc. No. 144-

11

145/L21. These general descriptions do not identify a decision or action about which the senders and receivers were allegedly deliberating.

ICE seeks to withhold another document based on the insufficient statement that it is a draft. *See Vaughn* Index Doc. No. 162-163/L8 ("Here, the information redacted consists of a draft notification letter that the Senior Attorney is sharing with the DCC of OPLA NYC. Draft documents, by their nature, are pre-decisional and preliminary versions of what may later become a final document in whole or in part."). However, "[t]he fact that the document is a non-final draft does not on its own demonstrate that the document is predecisional." *Amer. Imm. Council v. United States Customs and Border Prot.*, 590 F. Supp. 3d 306, 325 (D.D.C. 2022). ICE must do more to show the draft letter contains deliberative material. *See, e.g.*, *Arthur Andersen & Co. v. Internal Revenue Serv.*, 679 F.2d 254, 247-48 (D.C. Cir. 1982) ("Even if a document is a draft of what will become a final document, the court must also ascertain whether the document is deliberative in nature.") (quotation and citation omitted).

For these reasons, ICE has not met its burden to show that the records it seeks to withhold pursuant to the deliberative process privilege are both predecisional and deliberative.

## B. ICE has not adequately shown that responsive records are protected by attorney-client privilege.

ICE has also failed to meet its burden to withhold records under the attorney-client privilege. "The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services." *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 618 (D.C. Cir. 1997) (citation omitted). "The privilege also protects communications that flow from attorneys to their clients, but only if the communications are based, at least in part, on confidential information obtained from the client." *CREW v. United States Dep't*

*of Justice*, 538 F. Sup. 3d 124, 135 (D.D.C. 2021) *aff'd* 45 F.4th 963 (D.C. Cir. 2022) (citation omitted); *see also Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980), *cert. denied* 452 U.S. 905 (1981) ("[W]hen an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged."). "The agency must show that that the information provided by its lawyers was intended to be confidential and was not disclosed to any third party." *The Wilderness Soc'y v. United States Dep't of the Interior*, 344 F. Supp. 2d 1, 16 (D.D.C 2004) (citation omitted); *see also Mead Data Ctr. v. United States Dep't of the Air Force*, 566 F.2d 242, 254-55 (D.C. Cir. 1977) (noting that attorney-client communications "known by or disclosed to any third party" and "background information . . . not restricted to [agency] personnel directly responsible for the [relevant agency decision]" are not "confidential for purposes of [the] privilege").

*First*, ICE has not shown that withheld communications from agency lawyers were not disclosed to Mr. Doe's counsel. In an analogous case, ICE invoked attorney-client privilege to withhold information regarding the death of a detainee. *ACLU v. United States Dep't of Homeland Sec.*, 738 F. Supp. 3d 93, 114 (D.D.C. 2010). According to the agency, the withheld records "'consist[ed] of legal discussions between [Department] personnel and [Department] attorneys relating to the conduct of the investigation [into the death], policy formulation and final recommendations, as well as discussions of ongoing litigation and legal aspects of [Department] business processes.'" *Id*. (citation omitted) (alteration in original). The court found that ICE had not met its burden in part because "the Department was in communication with members of [the detainee's] family and their attorney regarding [her] death, so to the extent family members and the estate attorney became aware of facts contained in the records, that information is not protected by the attorney-client privilege." *Id*. at 115.

13

This case is analogous. ICE has invoked attorney-client privilege to protect a large and undifferentiated portion of communications between attorneys other ICE personnel regarding the disclosure of Mr. Doe's asylum application. These communications took place over several days leading up to ICE's acknowledgement of the disclosure and the remedial steps that it took. *See, e.g.*, Ex. A, Email from ICE to Mr. Doe's Immigration Counsel, Sept. 18, 2023; Ex. B, Joint Motion to Remand, Oct. 10, 2023. In its submissions to the Court, ICE has failed to demonstrate that the communications it seeks to withhold do *not* contain information disclosed to Mr. Doe's counsel at that time. Such a third-party disclosure would deprive privileged communications of protection.

*Second*, ICE has not sufficiently demonstrated that all of the withheld communications involving agency attorneys "reveal confidential information transmitted by field personnel" rather than merely reciting the law as developed by attorneys in both subdivisions. *See, e.g.*, *Tax Analysts*, 117 F.3d at 619-20 (finding that the IRS could only invoke attorney-client privilege as to Field Service Advice memoranda from the IRS Office of Chief Counsel if it showed that specific portions contained confidential government information); *Hornbeck Offshore Transp., LLC v. United States Coast Guard*, No. 04 Civ. 1724 (CKK), 2006 WL 696053, at *16 (D.D.C. March 20, 2006) ("[T]his Circuit has held on numerous occasions that when officials within an agency . . . communicate information from third parties . . . to the agency's counsel . . . and ask for legal advice, the counsel's written responses containing 'neutral, objective analyses of agency regulations' are not privileged.") (quoting *Coastal States*, 617 F.2d at 863) (citing *Tax Analysts*, 117 F.3d at 619, and *Schlefer v. United States*, 702 F.2d 233, 235-36 (D.C Cir. 1983)). Here, although agency personnel were seeking advice from ICE attorneys, the attorneys' responses likely contain nonprivileged analyses of 8 C.F.R. § 208.6 or similar established interpretations of immigration law. *See* Pineiro Decl. ¶ 29 (describing ILPD's mission in part as "ensuring

consistency in OPLA's litigating positions before the nation's immigration courts [and] guiding the development of federal court decisional law"); *see also* Ex. E Fact Sheet: Federal Regulation Protecting the Confidentiality of Asylum Applicants at 1, 3, USCIS, Oct. 18, 2012 (noting that DHS has created "established guidance" vis-à-vis breaches of 8 C.F.R. § 208.6.).

ICE's descriptions are not sufficient to show otherwise as they merely restate that the records contain recommendations and analyses of the violation. *See, e.g.*, *Vaughn* Index at 10-11, Doc. No. 32-33/L66 ("The attorney-client privilege applies in this instance because it is a discussion between an attorney, the DCC, and their client (ERO) in the course of which the DCC provides his legal opinion as to the inadvertent disclosure of information."); *Vaughn* Index Doc. No. 152-153/L16 ("In this email exchange, ILPD is providing their legal opinion and advice to OPLA NYC, in their capacity as advisors to the field offices, regarding their recommendation  and analysis as to whether the disclosure of Plaintiff's information violated 8 CFR § 208.6.").

For these reasons, the Court should deny ICE summary judgment on its claim that it has properly invoked attorney-client privilege to withhold records.

**C.    ICE has failed to show that it reasonably foresees harm to a protected interest from disclosure of the remaining withheld records.**

Even if, *arguendo*, ICE descriptions of its Exemption 5 withholdings were otherwise sufficient, ICE has not demonstrated that it "reasonably foresees that disclosure would harm an interest protected by a [FOIA exemption]." 5 U.S.C. § 552(a)(8)(A)(i). This requirement, enacted in 2016, imposes an "independent and meaningful burden" on agencies to "identify specific harms to the relevant protected interest that it can reasonably foresee would actually ensue from disclosure of the withheld materials and connect the harms in a meaningful way to the information withheld." *Ctr. for Investigative Reporting v. United States Customs and Border Prot.*, 436 F. Supp.

3d 90, 106 (D.D.C. 2019) (quotation, citation, and alteration omitted). Agencies cannot show foreseeable harm by submitting, for example, "boilerplate and generic assertions that release of any deliberative material would necessarily chill internal discussions." *Reporters Comm. for the Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 370 (D.C. Cir. 2021); *see also Judicial Watch Inc. v. United States Dep't of Justice*, No. 17 Civ. 832 (CKK), 2019 WL 4644029, at *4 (D.D.C. Sept. 24, 2019) (rejecting as insufficient "nearly identical boilerplate statements regarding the harms that will result" from disclosure, used throughout agency's *Vaughn* index). Foreseeable harm may require greater detail for "deliberations [that] involve more mundane, quotidian matters or [where] the decision has already been made." *Rosenberg v. United States Dep't of Defense*, 442 F. Supp. 3d 240, 259 (D.D.C. 2020).

Here, ICE has offered "precisely the kind of boilerplate recitation, untethered to the content of any particular document or category of documents, that our Circuit and courts in this district have deemed insufficient to show foreseeable harm." *CREW v. United States Dep't of Justice*, No. 23 Civ. 262 (JEB), 2024 WL 3858560, at *8 (D.D.C. Aug. 19, 2024).[3] ICE repeatedly offers the same sentences averring harm to interests protected, respectively, by the deliberative process or attorney-client privileges:

> Disclosure would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel and between agencies and ensure personnel would be less inclined to freely memorialize their thoughts regarding litigation strategies, which would adversely affect the ability to ICE to effectively conduct government business.
>
> If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and

---

[3] In *CREW*, the agency's boilerplate recitation stated that disclosure would impair "'CRT's ability to freely exercise the kind of prosecutorial dynamic envisioned in the protections afforded to federal agencies for the currently active matters as well as for the prospective law enforcement proceedings for federal voting rights work and federal accessibility work.'" *CREW*, 2024 WL 3858560, at *8 (citation omitted).

> could chill interactions and communications between agency employees and their
> legal counsel.

*See generally Vaughn* Index ICE does not apply these statements to specific subcategories of documents and makes no attempt either to tie them to the content of individual documents or to distinguish them from a simple restatement of the privileges. *Cf. Buzzfeed, Inc. v. Dep't of Homeland Sec.*, No. 19 Civ. 3295 (TJK), 2022 WL 3976099, at *6 (D.D.C. Sept. 1, 2022) (requiring more information where claims of foreseeable harm did not link harm to specific information and were "tantamount to arguing that any material covered by the deliberative process privilege also meets the foreseeable harm standard.") (citation and quotation omitted).

Beyond the facial insufficiency of ICE's statements, ICE fails to show foreseeable harm in light of other considerations related to the specific context of Mr. Doe's FOIA and to the disclosures ICE has already made. *See, e.g.*, *Rosenberg*, 442 F. Supp. 3d at 259 (noting that "[t]he degree of detail necessary to substantiate a claim of foreseeable harm is context-specific."). *First*, ICE has already concluded whatever decision-making or consultative processes the withheld records reflect—whether regarding the legality of the disclosure, the appropriate next steps, or, where relevant, the basis for Mr. Doe's detention—and has already communicated these to him and to the Immigration Court. As the court in *Center for Investigative Reporting* noted, where an agency has already made a relevant decision, it may be required to offer more detailed information as to the role of a withheld record in its deliberative process. *See* 436 F. Supp. 3d at 107-08 (requiring more detail where records related to an RFP for which the successful bidders had already been selected). ICE does not offer such sufficient detail.

*Second*, ICE's determinations that the disclosure violated 8 C.F.R. § 208.6 or that Mr. Doe is detained pursuant to a certain statute are "mundane" and "quotidian matters" demanding greater

specificity to show foreseeable harm. These determinations require only a simple analysis and application of a narrow set of facts. *Cf. Rosenberg*, 442 F. Supp. 3d at 259 (distinguishing such matters from "obviously sensitive" matters like "the disclosure of internal deliberations between a high-ranking military commander and senior government officials about a new detention operation in the United States").

*Third*, and perhaps most strikingly, ICE does not sufficiently explain how the remaining withheld records would have a greater chilling effect than the records it produced on September 9, which reveal candid communications among ICE personnel, including attorneys, about the same topics.[4] Indeed, it is hard to imagine a more candid communication than an off-the-cuff, certainly non-final, assessment that Mr. Doe's complaint "was apparently yet another BS allegation by the hug-a-thugs, not an internal issue." *See* Suppl. Production at 38; *Vaughn* Index Doc. No. 40/L65 (stating, without explanation, that "ICE no longer claims Exemption 5 as to the information withheld in the body of this email."). In another email produced on September 9, an ERO employee states that "I'd assume someone shared the documents from the file with the local criminal courts." Suppl. Production at 19, Doc. No. L33; Suppl. Production at 16, Doc. No. 144/L22, while another discloses an ILPD attorney's opinion that

> it wouldn't hurt to at least explain the reasons for the disclosure once we get back
> before the IJ (i.e., the respondent was collaterally attacking his conviction b/c it

---

[4] Although release of some records does not "waive [an agency's] right to withhold others," *e.g.*, *Students Against Genocide v. United States Dep't of State*, 257 F.3d 828, 836 (D.C. Cir. 2001), the question of whether voluntary disclosure impacts foreseeable harm is narrower. At least one court has addressed whether public disclosure may negate an agency's foreseeable harm. *Savage v. Dep't of Justice*, No. 22 Civ. 2477 (JEB), 2024 WL 2880438, at *10 (D.D.C. June 7, 2024). The situation in *Savage*, however, was different. The court noted that "[e]ven if *public records* contain some information about what the CIA did or did not do . . . there has been no official confirmation by Justice that the information is true (or not true), or of the role that specific information may have played in its investigative and prosecutorial decisions." *Id.* (emphasis added) Here, conversely, the records in question have been released by ICE itself (rather than being found in a public record) and there is no question that they played a role in the relevant agency deliberations.

rendered him ineligible for asylum). It isn't an exception under 208.6, but it will at
least provide context for us providing the decision to the DA.

Suppl. Production at 14-15, Doc. No. 142-143/L24. Yet another email, sent in the course of drafting

the joint motion to remand Mr. Doe's proceedings, reveals an OPLA staff member's rationale for

not disclosing the letter in which the Nassau County ADA requested Mr. Doe's records:

> We didn't want to share that letter and create new avenues for litigation/challenges,
> or get caught up in a longer back and forth based on the contents of that request so
> we left it out as it did not seem absolutely necessary. We'll definitely push to add
> that context if/when the matter is remanded before the IJ.

Suppl. Production at 14; Doc. No. 142/L25.

These records appear to disclose discussions on the same topics and between the same

parties as records that ICE continues to withhold. The correspondence appears inseparable from

the deliberations and decisions that ICE invokes elsewhere. And, as the OPLA staff member's

email shows, they include candid discussions of litigation strategy, regarding both the FOIA

request and Mr. Doe's immigration proceedings. Nowhere does ICE explain that the records in the

Supplemental Production are *less* chilling—despite their overt frankness and pertinence to ICE's

decisions in light of the unlawful disclosure—than the records it continues to withhold.

Finally, the purpose of the foreseeable harm requirement militates against finding that ICE

satisfies the standard. Congress's purpose in enacting the requirement was to address agencies'

"overus[e] of FOIA exemptions that allow, but do not require, information to be withheld from

disclosure." S. Rep. No. 114-4, at 2 (2015); *see also* H.R. Rep. No. 114-391, at 9–10 ("[T]here is

concern that agencies are overusing [FOIA's] exemptions to protect records that should be

releasable under the law . . . . The deliberative process privilege is the most used privilege and the

source of the most concern regarding overuse.") (both cited by *Ctr. for Investigate Reporting*, 436

F. Supp. 3d at 104). Here, ICE is suddenly willing to release previously withheld information, but

does explain what makes that information different from the remaining glut of records that it continues to withhold under Exemption 5. This unexplained shift suggests that ICE's broad application of Exemption 5 may be the kind of overuse that Congress sought to prevent through the foreseeable harm requirement.

ICE cannot show foreseeable harm without explaining how disclosing the records it continues to withhold would have a greater chilling effect than these manifestly candid interagency communications.

## III.    ICE Has Not Met Its Burden on Segregability

ICE has not met its burden to show that it complied with FOIA's requirement to release "[a]ny reasonably segregable portion of a record . . . after deletion of the [exempt portions]." 5 U.S.C. § 552(b). "It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless inextricably intertwined with exempt portions." *Mead Data Ctr.*, 566 F.2d at 260. "Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." *Sussman v. United States Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (citing *Summers v. United States Dep't of Justice*, 140 F.3d 1077, 1081 (D.C. Cir. 1998)). To meet its burden on segregability, "the agency must provide a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." *Sierra Club v. United States Fish and Wildlife Serv.*, 523 F. Supp. 3d 24, 38-39 (D.D.C. 2021) (quotation and citation omitted); *see also Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996) (determining that government affidavits explained non-segregability of documents with "reasonable specificity").

There are several reasons to doubt that ICE has released all segregable non-exempt material as required by FOIA. *First*, ICE's statements about its segregability review have been inconsistent

and vague. After its March 14, 2024 production, ICE produced further segregable, non-exempt portions of responsive records on September 9, 2024. But, as stated, this production is not accounted for or explained in ICE's submission, other than indirectly in the *Vaughn* index. As stated, Director Pineiro incorrectly describes the March 14, 2024 production as "the final production." Pineiro Decl. ¶ 31. ICE's Statement of Facts further avers that "all responsive, non-exempt records were provided to Plaintiff in the final production March 14, 2024." Def.'s Statement of Facts ¶¶ 18, 19. At the same time, Director Pineiro states that "[a] line-by-line review was conducted" and that "all information not exempted from disclosure . . . was correctly segregated and non-exempt portions were released," Pineiro Decl. ¶¶ 53-54. *See also* Def.'s Memo. of Law at 11.[5] It is not clear how to interpret this statement given its inconsistency with the "re-review" that ICE conducted for the Supplemental Production. ICE must more clearly indicate whether there is more non-exempt segregable material in the remaining withheld records.

*Second*, ICE offers nothing beyond conclusory statements about whether additional segregable material exists. Director Pineiro's statement quoted immediately above, even if read to include the considerations behind the September 9 production, is nonspecific and devoid of any reasoning. *See, e.g.*, *Mead Data Ctr.*, 566 F.2d at 261 ("[U]nless the segregability provision of the FOIA is to be nothing more than a precatory precept, agencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts."); *Pub. Emps. for Env't Resp. v. Enviro. Protec. Agency*, 288 F. Supp. 3d 15, 27 (D.D.C. 2017) (finding inadequate "boilerplate, conclusory language to describe [agency's]

---

[5] Although ICE's memorandum of law cites Director Pineiro's declaration for the claim that "ICE each determined that all information withheld either was exempt from disclosure or was so intertwined with protected material that segregation was not possible without revealing the underlying protected material," Def.'s Memo. of Law at 11, Director Pineiro does not in fact make any statement about non-exempt portions being intertwined with exempt portions. *See* Pineiro Decl. ¶¶ 52-54.

efforts to segregate nonexempt, factual material from exempt material."). In the *Vaughn* index, similarly, ICE does not once offer a specific explanation of "why [a] document is exempt" as to redacted portions or "why no portion of it" could be further segregated. *Armstrong*, 97 F.3d at 578-80 (finding that such document-by-document explanations satisfied the agency's burden). Rather, ICE simply states whether a full or partial redaction took place without further comment or explanation. Even where ICE produced further non-exempt material on September 9, it merely states that "[o]n further consideration, ICE no longer claims" an exemption as to a full record or a portion "and will process it for release." The lack of any explanation is even more puzzling given that, as stated above, it is difficult to deduce how the records produced on September 9 differ from those ICE continued to withhold. ICE's statements therefore fail to meet the required specificity as to whether additionally non-exempt information can be segregated. *See, e.g.*, *Mead Data Ctr.*, 566 F.2d at 260 (requiring agency to provide more detailed justification than conclusory assertion that there "were no factual portions . . . which could be reasonably segregated").

*Third*, despite the dearth of explanations, ICE's statements and productions in fact suggest that additional segregable non-exempt material exists. In at least some of the emails released in ICE's Supplemental Production, ICE appears to have released portions that contain non-exempt factual information. *See, e.g.*, Doc. No. 54-55/L58 (showing an OPLA employee requesting "GILD and/or ILPD's position" on the disclosure followed by a long recitation of the facts of Mr. Doe's case); Doc. No. 43-44/L62 (showing a member of ERO's New York City Field Office offering a citation to the relevant regulation and asking about how the disclosure occurred). It is reasonable to believe that there are, at a minimum, segregable non-exempt portions in records that remain withheld in full, but have similar content to disclosed records . *See, e.g.*, *Vaughn* Index at 11-12 (describing Doc. No. 74-75/L55 as an email in which an individual "provides an explanation of

22

the facts of the disclosure of Plaintiff's information and seeks counsel from GILD on the application of 8 CFR § 208.6 to the facts."); *id*. at 37-38 (describing Doc. No. 145-146/L20 as an email in which an individual "is requesting advice on whether [OPLA] has additional obligations and is laying out pertinent facts for ILPD and GILD."). ICE cannot meet its burden on segregability when its submissions demonstrate the similarities between allegedly exempt records and allegedly non-exempt records and provides no further explanation.

## CONCLUSION

For these reasons, the Court should deny ICE's motion for summary judgment, grant Mr. Doe's cross-motion for summary judgment, order that ICE release non-exempt materials previously withheld in full or in part under Exemption 5, and order that ICE perform a supplemental search and release all resulting non-exempt, responsive records.

Dated: October 7, 2024                    Respectfully submitted,
      New York, NY

                                    /s/ Kevin Siegel_____
                                    Kevin Siegel
                                    Alexandra Lampert
                                    Brooklyn Defender Services
                                    177 Livingston Street, 7th Floor
                                    Brooklyn, NY 11201
                                    T: (718) 254-0700 ext. 288
                                    E: ksiegel@bds.org

                                    *Counsel for Plaintiff*