UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 24-617 (TJK) |
| | ) | |
| UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) | |
| | ) | |
| Defendant. | ) | |

## SUPPLEMENTAL DECLARATION OF FERNANDO PINEIRO

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the FOIA Director of the U.S. Immigration and Customs Enforcement ("ICE") Freedom of Information Act ("FOIA") Office. I have held this position since August 14, 2022, and I am the ICE official immediately responsible for supervising ICE responses to requests for records under the Freedom of Information Act, 5 U.S.C § 552 (the FOIA), the Privacy Act, 5 U.S.C. § 552a (the Privacy Act), and other applicable records access statutes and regulations. Prior to this position, I was the Deputy FOIA Officer of the ICE FOIA Office from December 29, 2013, to August 13, 2022, and prior to that I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties ("CRCL") at the U.S. Department of Homeland Security ("DHS"). The ICE FOIA office mailing address is 500 12th Street, S.W., STOP 5009, Washington, D.C. 20536-5009.

2. As the FOIA Director my official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office regarding the processing of FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. In connection

1

with my official duties and responsibilities, I am familiar with ICE's procedures for responding to requests for information pursuant to the FOIA and the Privacy Act.

3. I make this supplemental declaration in further support of ICE's Motion for Summary Judgment in the above-captioned action. The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

4. This declaration supplements and incorporates by reference my previous declaration dated August 29, 2024, styled "Declaration of Fernando Pineiro."

5. The purpose of this declaration is to respond to assertions made Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment ("Cross-Motion") regarding the sufficiency of my prior declaration, the contention that ICE failed to conduct an adequate search and the challenges asserted regarding the withholdings applied to the subject records. While my prior declaration was sufficiently detailed, I provide this supplemental declaration to provide additional clarification to the Court.

## I. ICE'S ADEQUACY OF THE SEARCH

6. In Plaintiffs' Cross-Motion, Plaintiffs asserts that ICE's search is inadequate because the Government Information Law Division ("GILD") did not search. (ECF No.19, pg. 7).

7. Upon filing of ICE's Motion for Summary Judgement, ICE believed that responsive records in possession of GILD, would reasonably be believed to have been provided to the OPLA New York Field Office, and therefore duplicative. However, upon review of Plaintiff's Cross-Motion, in good faith, ICE tasked GILD to conduct a search.

8. On December 3, 2024, the ICE FOIA Office issued a supplemental response to Plaintiff, along with 184 pages of responsive records to the request. As stated in the December 3, 2024, letter, ICE processed 408 pages of potentially response records. Of these pages, 137 were

deemed duplicates, 86 were deemed non-responsive, and 184 pages were withheld in part based on FOIA Exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). **A true and complete copy of ICE's December 3, 2024, letter is attached hereto as Attachment A.**

## II. FOIA EXEMPTION (B)(5)

9. In Plaintiff's Cross-Motion, Plaintiff asserts that "ICE has not met its burden to justify its withholdings pursuant to the deliberative process privilege. The deliberative process privilege protects materials that 'bear on the formulation or exercise of agency policy-oriented judgment.' *Petroleum Info. Corp. v. United States Dep't of the Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992)." Plaintiff further states that "ICE has failed to meet its burden because it has not identified a decision associated with the records it seeks to withhold" and that the descriptions in ICE's *Vaughn* Index "do not place the relevant records in any clear decisional process, such as a specific decision or action to be taken in response to the disclosure. *See, e.g.*, *Judicial Watch, Inc. v. United States Postal Serv.*, 297 F. Supp. 2d 252, 264 (D.D.C. 2004) (finding that the description "'actions taken or proposed in response to the discovery of anthrax in the mail'" did "not identify specific final decisions or decisionmaking processes to which the documents contributed.") (emphasis in original)." (ECF No. 19, pg. 9)

10. Although Plaintiff argues that ICE did not specify the decisional process that the withholdings relate to, as I stated in my initial declaration, the information withheld as deliberative consists of pre-decisional advice and recommendations to agency decision makers, and advice regarding the disclosure of Plaintiff's information. The advice and recommendations withheld in the email records led to the agency's determination that the inadvertent disclosure violated 8 C.F.R. § 208.6. Additionally, the advice, recommendations, and conclusions in the email records led to decisions regarding the issuance of a clawback letter to the Nassau County District Attorney's Office, the issuance of a letter to Plaintiff regarding the inadvertent disclosure, and ICE's decision to agree to either join in a motion to reopen or not oppose a motion to remand Plaintiff's removal proceedings from the Board of Immigration Appeals to the immigration court under INA § 240(c)(7)(A), as well as a final decision about ICE's response to Plaintiff's correspondence requesting immediate release of Plaintiff from detention.

3

11. Upon further review of Plaintiff's assertions that "ICE seeks to withhold another document based on the insufficient statement that it is a draft. *See Vaughn* Index Doc. No. 162-163/L8" (ECF No. 19, pg. 12), in the spirit of cooperation and as an exercise of the discretion, ICE has determined to release the letter identified in ICE's *Vaughn* Index at 162-163/L8. This was produced to Plaintiff as part of ICE's December 3, 2024, supplemental response.

12. Further, in Plaintiff's Cross-Motion, Plaintiff argue that ICE has not met its burden to withhold records under the attorney-client privilege. To my knowledge, the confidential communications withheld under the attorney-client privilege have not been disclosed to any third-party.

### III. FORESEEABLE HARM

13. Plaintiff's Cross-Motion asserts that "ICE has not demonstrated that it 'reasonably foresees that disclosure would harm an interest protected by a [FOIA exemption].' 5 U.S.C. § 552(a)(8)(A)(i)."

14. The FOIA Improvement Act of 2016 simply codified the Department of Justice's foreseeable harm standard which ICE has been following for years. To the extent that it is not already clear or there is any confusion, ICE FOIA only withholds information when the agency reasonably foresees that disclosure would harm an interest protected by an exemption or disclosure is prohibited by law.

15. Upon review of Plaintiff's Cross-Motion, I aver that two email communications referenced by Plaintiff (ECF No. 19, pgs. 18-19), Suppl. Production at 14-15, Doc. No. 142-143/L24 and Suppl. Production at 14; Doc. No. 142/L25, were incorrectly released due to human error and should be withheld pursuant to FOIA Exemption (b)(5) as deliberative and attorney-client privileged information.

16. With respect to the remaining Exemptions (b)(5), as I stated in my previous declaration, the agency reasonably foresees that disclosure would: 1) harm the deliberative process privilege which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations

included within inter-agency or intra-agency documents; 2) harm the expression of candid opinions and the free and frank exchange of information among agency personnel, which would result in a chilling effect on intra- and inter-agency communications; and 3) cause harm if a draft, containing un-finalized information regarding agency policies and law enforcement actions or techniques were released, because the public could potentially become confused regarding ICE's mission and law enforcement activities.

### IV. SEGREGABILITY

17. 5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." As I stated in my previous declaration, a line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied and all information not exempted from disclosure pursuant to the FOIA exemptions specified above were correctly segregated and non-exempt portions were released.

18. I further add that the line-by-line review was conducted by multiple ICE employees and, in connection with that process, on September 9, 2024, the agency in good-faith made a supplemental, discretionary release of portions of 42 pages where it was determined additional information could be released that was previously withheld under FOIA Exemptions (b)(5) and (b)(7)(E). **A true and complete copy of ICE's September 9, 2024 letter is attached hereto as Attachment B.**

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.

Signed this \_\_\_\_ day of December 2024.

_____
Fernando Pineiro, FOIA Director
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009