UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE,<br><br>    *Plaintiff*,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>    *Defendant*. | Civil Action No. 24-617 (TJK) |

### MEMORANDUM OPINION

While John Doe was applying for asylum in the United States, U.S. Immigration and Customs Enforcement improperly disclosed confidential information related to his application. Doe filed a Freedom of Information Act request with ICE for all records relating to that disclosure. In its response, ICE withheld several documents under the deliberative-process and attorney-client privileges. The parties now cross-move for summary judgment. For the reasons explained below, the Court finds that ICE has not shown that all its withholdings were proper. That said, it will provide ICE another opportunity to do so, so it will deny both parties' motions without prejudice.

**I.     Background**

Doe is a foreign national who applied for asylum in the United States. ECF No. 18-1 ¶ 2. While his application was pending, U.S. Immigration and Customs Enforcement ("ICE") disclosed information about it to third parties, contrary to relevant regulations. *Id.*; *see also* 8 C.F.R. § 208.6(a). In response, Doe filed a Freedom of Information Act ("FOIA") request with ICE "seek[ing] documents and communications relating to" those disclosures. ECF No. 18-1 ¶¶ 1–2; *see* ECF No. 18-5.

After several months had passed, Doe sued. ECF No. 18-1 ¶¶ 3–4. Then, just over a week

later, ICE responded to his FOIA request. *Id.* ¶ 5. After reviewing 1,613 pages of records, ICE released 294 pages to Doe. ECF No. 18-9 at 1. But Doe remained dissatisfied with ICE's response, so the Court ordered the parties to proceed with cross-motions for summary judgment. ECF No. 18-1 ¶ 6; Min. Order of June 4, 2024.

Since then, the parties' dispute has narrowed. Doe initially "challenge[d] the adequacy of ICE's search, along with the assertion of FOIA Exemptions 5 and 7(E) to portions of the records responsive to its FOIA request." ECF No. 18-1 ¶ 6. But by the time Doe filed his cross-motion for summary judgment, ICE had released more records, causing Doe to drop his challenge to ICE's Exemption 7(E) withholdings. ECF No. 20-1 at 6 & n.1. Then, another search by ICE led the parties to agree that ICE's search was adequate. ECF No. 24 at 4. Doe's only remaining claim is that ICE improperly withheld records under Exemption 5. *Id.*; *see also* 5 U.S.C. § 552(b)(5).

## II. Legal Standard

"Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movant[] and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in [his] favor." *Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016) (citation omitted). "The evidence presented must show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

"In the FOIA context, a district court reviewing a motion for summary judgment conducts a de novo review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA." *MacLeod v. DHS*, No. 15-cv-1792, 2017 WL 4220398, at *6 (D.D.C. Sept. 21, 2017) (citing 5 U.S.C. § 552(a)(4)(B)); *see also Cable News Network, Inc. v. FBI*, 271 F. Supp. 3d 108, 111 (D.D.C. 2017) ("Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the

FOIA expressly places the burden on the agency to sustain its action." (citation modified)). The Court may "treat the [agency]'s factual proffers as conceded, but it must address [its] legal arguments on their merits." *King v. DOJ*, 245 F. Supp. 3d 153, 158 (D.D.C. 2017).

**III.  Analysis**

"FOIA requires federal agencies to make records publicly available upon request unless one of nine exemptions applies." *Emuwa v. DHS*, 113 F.4th 1009, 1012 (D.C. Cir. 2024). ICE argues that its withholdings fall within Exemption 5, which permits agencies to withhold records "that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption "incorporates privileges available to agencies in civil litigation," *Emuwa*, 113 F.4th at 1013, including "(1) the deliberative-process privilege and (2) the attorney-client privilege," *Dalal v. DOJ*, 643 F. Supp. 3d 33, 59 (D.D.C. 2022) (quoting *Am. Immigr. Council v. DHS*, 21 F. Supp. 3d 60, 74 (D.D.C. 2014)).

That said, even if a record falls within an exemption, that alone does not justify withholding it. "[E]ven if an exemption applies, the agency may withhold the record only if it 'reasonably foresees that disclosure would harm an interest protected' by the exemption." *Emuwa*, 113 F.4th at 1013 (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)). This "requirement imposes an independent and meaningful burden on agencies." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (citation modified). It "foreclose[s] the withholding of material unless the agency can articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld." *Id.* (second alteration in original) (quotation and internal quotation marks omitted).

ICE relies on two privileges protected by Exemption 5—the deliberative-process privilege and the attorney-client privilege—to justify its withholdings. But ICE's declarations and *Vaughn* index do not sufficiently show that all its withheld documents fall within the asserted privileges.

3

And, for all its withholdings, ICE has not sufficiently identified a foreseeable risk of harm from disclosure. So the Court will deny the cross-motions for summary judgment without prejudice and require ICE to "provide a more detailed declaration or updated *Vaughn* index alongside a renewed motion for summary judgment." *Dalal*, 643 F. Supp. 3d at 62.

### A. The Deliberative-Process Privilege

The deliberative-process privilege permits agencies to withhold "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Reps. Comm.*, 3 F.4th at 357 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). It "ensures that 'debate and candid consideration of alternatives within an agency' are not subject to public inspection" to promote honest and frank communication within the agency. *Emuwa*, 113 F.4th at 1013 (quoting *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020)). "The privilege may only be invoked for documents that are both predecisional and deliberative." *Reps. Comm.*, 3 F.4th at 362. To be predecisional, the document must have been "generated before the agency's final decision on the matter." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021). And to be deliberative, it must have been "prepared to help the agency formulate its position" and "reflect[] the give-and-take of the consultative process." *Reps. Comm.*, 3 F.4th at 362 (quotations omitted). To rely on the exemption, the agency must "pinpoint an agency decision or policy to which the document contributed." *Senate of the Commonwealth of Puerto Rico ex rel. Judiciary Comm. v. DOJ*, 823 F.2d 574, 585 (D.C. Cir. 1987). The agency must also "show the roles of the document drafters and recipients, the nature of the withheld content, . . . the stage within the broader deliberative process in which the withheld material operates," and "the way in which the withheld material facilitated agency deliberation." *Campaign Legal Ctr. v. DOJ*, 34 F.4th 14, 23 (D.C. Cir. 2022) (citation modified).

As with all other privileges under FOIA Exemption 5, to invoke the deliberative-process privilege, an agency must show that "it is reasonably foreseeable that release of those materials would cause harm to an interest protected by that privilege." *Reps. Comm.*, 3 F.4th at 361. For "withholdings made under the deliberative process privilege, the foreseeability requirement means that agencies must concretely explain how disclosure 'would'—not 'could'—adversely impair internal deliberations." *Id.* at 369–70 (citation omitted). "[B]oilerplate and generic assertions" are not enough. *Id.* at 370. "Instead, what is needed is a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.*

ICE withheld 31 documents under the deliberative-process privilege.[1] But even assuming these documents fall under the deliberative-process privilege,[2] ICE has failed to meet its burden

---

[1] The Court adopts the identification numbers included in ICE's *Vaughn* index: 9/L75; 10-9/L74; 10/L73; 10-11/L72; 51/L61; 51-53/L60; 54-55/L58; 56-58/L57; 73/L56; 80/L53; 81-81/L52; 82/L51; 90-91/L49; 91/L48; 102-103/L43; 124-125/L40; 125-126/L39; 127-128/L38; 128/L37; 130/L34; 133/L29; 134/L28; 134-135/L27; 135-136/L26; 144-145/L21; 145-146/L20; 147-149/L18; 150-151/L17; 152-153/L16; 153-155/L14; 156/L13. *See* ECF No. 18-4. ICE also initially withheld document 162-163/L8 under this privilege, but it has since released it. ECF No. 22-2 ¶ 11.

[2] To repeat, ICE is required under the deliberative-process privilege to identify and explain the role the withheld documents played in the agency's "decisional process." *Citizens for Resp. & Ethics in Wash. v. DOJ*, 45 F.4th 963, 972 (D.C. Cir. 2022). It is not obvious that ICE has met its burden on this record. ICE does, in its *Vaughn* Index, provide the job titles and/or offices for the drafters and recipients of those documents over which it claims the deliberative-process privilege, as well as a brief description of the decisions being undertaken. It states, for instance, that some documents related to its decision about whether to release Doe from ICE detention, as well as whether its disclosure of Doe's asylum application information violated 8 C.F.R. § 208.6, and, if so, how to respond to that violation. ECF No. 18-3 ¶ 40; ECF No. 22-2 ¶ 10. And some information about the structure of ICE's operations—including that of its Principal Legal Advisor's Office—is present in the Declaration, although it is framed in terms of ICE's search for responsive records. *See* ECF No. 18-3 ¶¶ 25–30. In any event, given the other problems with its assertion of this exemption, ICE will have the chance to provide more specific information about the role each "individual document . . . play[ed] in the administrative process." *Nat'l Sec. Couns. v. CIA*, 960 F.

5

of showing that their disclosure would lead to a reasonably foreseeable harm.

ICE represents that it reasonably foresees that it will suffer three harms if it is compelled to produce the records it says are covered by the deliberative-process privilege: disclosure would (1) discourage free and frank discussion and chill agency communications, (2) potentially confuse the public about ICE's policies, mission, and activities, and (3) harm the deliberative-process privilege. ECF No. 18-3 ¶ 41; ECF No. 22-2 ¶ 16. But because ICE has not sufficiently "articulate[d] . . . the link between the specified harm and specific information contained in the material withheld," it has not justified its invocation of the privilege. *Reps. Comm.*, 3 F.4th at 369 (quotation omitted).

As for ICE's first asserted harm—the chilling of future agency communications—ICE has not provided the requisite "focused and concrete demonstration" of that harm. *Reps. Comm.*, 3 F.4th at 370. In his first declaration, ICE's FOIA Director, Fernando Pineiro, notes that the "deliberative process privilege protects the integrity of the deliberative or decision-making processes within the agency" by exempting privileged materials from disclosure. ECF No. 18-3 ¶ 41. He adds that the "release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel," which would in turn "result in a chilling effect on intra- and inter-agency communications." *Id.* Director Pineiro then repeats this justification in his supplemental declaration, using nearly identical language. ECF No. 22-2 ¶ 16.

These "boilerplate" claims are insufficient. *Reps. Comm.*, 3 F.4th at 370. An agency

---

Supp. 2d 101, 190 (D.D.C. 2013) (citation modified); see also *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980).

cannot rest on "generalized and conclusory" statements that merely "mouth[] the generic rationale for the deliberative process privilege itself." *Id.* Nor is it enough to just say that disclosure "would chill full and frank discussions between agency personnel and decision makers regarding a decision" and that agency staff "would be less candid and more circumspect in expressing their thoughts, which would impede the fulsome discussion of issues necessary to reach a well-reasoned decision." *Id.* (quoting the agency's insufficient declarations). But this is what ICE has provided here, down to many of the same words.

Indeed, this is not the first time ICE has tried to rely on similar language. Since the Circuit decided *Reporters Committee*, multiple courts have found that nearly identically worded ICE declarations have failed to pass muster. *See, e.g.*, *Am. Oversight v. DHS*, 691 F. Supp. 3d 109, 117 (D.D.C. 2023) (finding as insufficient ICE declarations asserting that disclosure of the relevant records "would discourage the expression of candid opinions between agency personnel and adversely impact the quality of internal policy decisions" (cleaned up)); *Transgender L. Ctr. v. ICE*, 775 F. Supp. 3d 131, 152–53 (D.D.C. 2025) (rejecting an ICE declaration claiming that disclosure would "discourage the expression of candid opinions, and inhibit the free and frank exchange of information among agency personnel, resulting in a chilling effect" (cleaned up)). As these courts have said, such "scanty" declarations that "purport[] to sweepingly address *all* of the deliberative information in th[e] case" and "broadly fail[] to specifically focus [their] foreseeable harm demonstration[s] on the information at issue in the documents under review" cannot support ICE's withholdings. *Reps. Comm.*, 3 F.4th at 370 (quotation and internal quotation marks omitted).

ICE's *Vaughn* index also does not provide the necessary link between the specific records withheld and the harm asserted. For all but one of the records it withheld under the deliberative-

process privilege,[3] ICE provides the same two-sentence justification:

> Release of this material would serve to profoundly chill the decision-making process across ICE, where it is crucial that employees are able to freely express their opinion regarding how best to represent the agency's interests and which litigation strategy to pursue.  Disclosure would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel and between agencies and ensure personnel would be less inclined to freely memorialize their thoughts regarding litigation strategies, which would adversely affect the ability to ICE to effectively conduct government business.

*E.g.*, ECF No. 18-4 at 3.  Then, for the remaining record, 56-58/L57, ICE provides an even more perfunctory justification, saying that its release "would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel, and also ensure personnel would be less inclined to produce and circulate materials for the consideration and comment of their peers." *Id.* at 17.

These explanations are just as generic and boilerplate as ICE's declarations.  To establish that harm is reasonably foreseeable, ICE must "consider the specific 'information at issue'" in the withheld documents. *Emuwa*, 113 F.4th at 1015 (quoting *Machado Amadis*, 971 F.3d at 371).  So in explaining why harm is foreseeable, the agency must grapple with the specifics of the withheld record or the information it contains and explain why disclosure of that particular record will impede future agency communications. *Reps. Comm.*, 3 F.4th at 369–70.  But in using the same boilerplate explanation for almost all of the documents withheld under the deliberative-process privilege with no particularized discussion of why disclosure would harm future agency deliberations, ICE has failed to provide the required explanation.  "Its cookie-cutter formulations" do not satisfy its burden to show that "disclosure of the particular type of material at issue will, in the

---

[3] 9/L75; 10-9/L74; 10/L73; 10-11/L72; 51/L61; 51-53/L60; 54-55/L58; 73/L56; 80/L53; 81-81/L52; 82/L51; 90-91/L49; 91-L48; 102-103/L43; 124-125/L40; 125-126/L39; 127-128/L38; 128/L37; 130/L34; 133/L29; 134/L28; 134-135/L27; 135-136/L26; 144-145/L21; 145-146/L20; 147-149/L18; 150-151/L17; 152-153/L16; 153-155/L14; 156/L13.

8

specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.* at 370.

ICE's second asserted harm—that releasing at least some of the withheld documents could lead to public confusion—fails for similar reasons. Though preventing public confusion is one of the interests underlying the privilege, *Reps. Comm.*, 3 F.4th at 361, ICE does not take the additional required steps to connect the dots. Director Pineiro declares that if some of the withheld documents—specifically, "draft, un-finalized responses to public inquiries and draft information regarding agency policies and enforcement actions"—"were released, the public could potentially become confused regarding ICE's mission and enforcement activities, as well as what positions have actually been adopted by the agency." ECF No. 18-3 ¶ 41; *see also* ECF No. 22-2 ¶ 16. But ICE "cannot rely on mere speculative or abstract fears . . . to withhold information." *Reps. Comm.*, 3 F.4th at 369 (quotation and internal quotation marks omitted). And more importantly, Director Pineiro does not "'specifically focus' [ICE's] foreseeable harm demonstration 'on the information at issue.'" *Id.* at 370 (quoting *Machado Amadis*, 971 F.3d at 371). So Director Pineiro's declarations do not do the trick.

ICE's *Vaughn* index also falls short. As mentioned, ICE invokes the deliberative-process privilege for one document that it describes as a draft. ECF No. 18-4 at 17. And the corresponding index entry claims that "[t]he privilege serves to avoid public confusion generated by rationales or decisions not ultimately adopted by an agency and maintains the integrity of agency decision-making processes by encouraging open and candid discussions." *Id.* But even with that statement, the identified entry does not make a "focused and concrete" showing that links the release of that draft in particular to the alleged public confusion. *Reps. Comm.*, 3 F.4th at 370. Instead, it only predicts that release of the document would result in the chilling effect on communication

9

described and rejected above. *Id.* So neither ICE's declarations nor its *Vaughn* index establishes that ICE reasonably foresees that disclosure of the records withheld would result in public confusion.

Finally, ICE argues that its withholdings under the deliberative-process privilege are needed to prevent "harm [to] the deliberative process privilege." ECF No. 22-2 ¶ 16. But ICE must explain *how* and *why* disclosure will harm the interests protected by the privilege. *See Reps. Comm.*, 3 F.4th at 369–70. The conclusory assertion that disclosure will harm the privilege itself, without more, is not enough.

For these reasons, ICE has not shown how it reasonably foresees that disclosure of the records withheld will injure an interest protected by the deliberative-process privilege.

**B.     The Attorney-Client Privilege**

The attorney-client privilege is one of the most "prominent and sacrosanct" privileges in American law. *Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021). It "protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services." *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997). "In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." *Id.* The privilege serves "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

Along with communications *from* clients to attorneys, the privilege also protects communications from attorneys *to* their clients, but only so long as "the communications are based, at least in part, on confidential information obtained from the client." *Citizens for Resp. & Ethics in Wash. v. DOJ*, 538 F. Supp. 3d 124, 135 (D.D.C. 2021), *aff'd*, 45 F.4th 963 (D.C. Cir. 2022). Said differently, for an agency lawyer to assert privilege over their communications to the agency, the

10

lawyer "must demonstrate with reasonable certainty that the lawyer's communication rested in significant and inseparable part on the [agency]'s confidential disclosure." *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984) (citation omitted). "If the information has been or is later shared with third parties," then it is not confidential. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 253 (D.C. Cir. 1977). Similarly, if the agency circulates the communication—even if only internally—beyond "those members 'of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication,'" the privilege falls away. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980) (quoting *Mead Data Cent., Inc.*, 566 F.2d at 253 n.24).

### 1. ICE Has Shown That the Attorney-Client Privilege Applies to the Documents Requesting Legal Advice, at Least in Part, but Not to the Documents Providing Legal Advice

As with all asserted exemptions under FOIA, "it falls to the government to prove, through 'detailed and specific information,' that the withheld information falls within the domain of the attorney-client privilege." *Am. Immigr. Council*, 21 F. Supp. 3d at 79 (quoting *Campbell v. DOJ*, 164 F.3d 20, 30 (D.C. Cir. 1998)). ICE claims that eighteen of its withheld records are covered by the attorney-client privilege.[4] These documents fall into two groups. The first includes eight documents in which an agency employee *requests* legal advice from an agency attorney;[5] the second includes ten documents in which ICE attorneys *provide* their legal advice.[6] ICE has shown

---

[4] 8/L76; 9/L75; 10-9/L74; 10/L73; 10-11/L72; 12/L70; 12/L69; 12-13/L68; 32-33/L66; 51-53/L60; 54-55/L58; 74-75/L55; 144-145/L21; 145-146/L20; 147-149/L18; 150-151/L17; 152-153/L16; 153-155/L14.

[5] 10-9/L74; 10-11/L72; 12-13/L68; 54-55/L58; 74-75/L55; 145-146/L20; 150-151/L17; 153-155/L14.

[6] 8/L76; 9/L75; 10/L73; 12/L70; 12/L69; 32-33/L66; 51-53/L60; 144-145/L21; 147-149/L18; 152-153/L16.

Case 1:24-cv-00617-TJK   Document 26   Filed 09/30/25   Page 12 of 16

that this first category is protected by the privilege, at least in part. But ICE has not provided enough information for the Court to conclude that the second is as well.

Beginning with the first group, ICE has shown that these eight documents are at least partially covered by the privilege. All are, to some extent, communications from agency staff "asking," "seeking," or "requesting" legal advice from ICE attorneys and involve discussions of "pertinent facts" regarding situations faced by the agency. ECF No. 18-4 at 5, 7, 10, 16, 19, 38, 41, 44. As a result, at least part of these documents "are 'confidential communications from clients to their attorneys made for the purpose of securing legal advice or services,' which '[t]he attorney-client privilege protects' categorically." *Zander v. DOJ*, 885 F. Supp. 2d 1, 16 (D.D.C. 2012), *on reconsideration in part* (Oct. 31, 2012) (quoting *Tax Analysts,* 117 F.3d at 618). But to the extent some parts of these documents go beyond asking for legal advice, they may not be covered by the privilege, for the reasons explained below.

But ICE has not met its burden for the second group of documents, which include legal advice that ICE's attorneys provided to the agency. Such communications are privileged only when they "rest on confidential information obtained from the client." *In re Sealed Case*, 737 F.2d at 99. So to claim the privilege, ICE must show that "the lawyer's communication rested in significant and inseparable part on the client's confidential disclosure." *Id.*

On this record, ICE has not made that showing. In his initial declaration, Director Pineiro merely states that the "documents withheld here under the attorney-client privilege are email exchanges between ICE attorneys and other ICE components where ICE attorneys provide confidential legal advice to their clients." ECF No. 18-3 ¶ 42. But that merely amounts to a conclusory assertion that the withheld documents are covered by the privilege. And "the [C]ourt is not allowed to grant summary judgment based on such conclusory statements." *Jud. Watch, Inc. v. USPS*, 297

12

F. Supp. 2d 252, 268 (D.D.C. 2004); *see also Mead Data Cent., Inc.*, 566 F.2d at 251. And it ignores the requirement that, for communications from attorneys to clients, the privilege applies only when the communication is based on confidential information. *In re Sealed Case*, 737 F.2d at 99.

ICE's *Vaughn* index fares no better. To be sure, the index states that the communications all involve the attorneys' legal opinions or advice. *E.g.*, ECF No. 18-4 at 2. So "it satisfies *most*"—but not all—"of the necessary conditions for application of the attorney-client privilege." *Mead Data Cent., Inc.*, 566 F.2d at 253 (emphasis added). But attorney-client privilege over communications from attorney to client further requires that the communications "rest on confidential information obtained from the client." *In re Sealed Case*, 737 F.2d at 99. Since ICE's *Vaughn* index "gives no indication as to the confidentiality of the information on which [its withholdings] are based," its entries describing only "the subject, source, and recipient of the legal opinion rendered" are insufficient. *Mead Data Cent., Inc.*, 566 F.2d at 253–54.[7]

In response, ICE asserts only that "the confidential communications withheld under the attorney-client privilege have not been disclosed to any third-party." ECF No. 22-2 ¶ 12. But "that the records remained within the Department is not alone a sufficient basis to withhold the documents." *ACLU v. DHS*, 738 F. Supp. 2d 93, 115 (D.D.C. 2010). What also matters is whether "confidential information gained from the client underpinned the" communication. *See In re Sealed Case*, 737 F.2d at 100. ICE has not provided sufficient evidence for the Court to answer

---

[7] In addition, ICE has not explained how these communications differ from "neutral, objective analyses of agency regulations" or other applicable provisions of law. *Coastal States Gas Corp.*, 617 F.2d at 863. "Indeed, this Circuit has held on numerous occasions that when officials within an agency communicate information from third parties to the agency's counsel and ask for legal advice, the counsel's written responses containing neutral, objective analyses of agency regulations are not privileged." *Hornbeck Offshore Transp., LLC v. U.S. Coast Guard*, No. 04-cv-1724, 2006 WL 696053, at *16 (D.D.C. Mar. 20, 2006) (cleaned up) (collecting cases).

that question.

For these reasons, the Court concludes that ICE has only borne its burden of showing that the attorney-client privilege covers a portion of the records it withheld.

### 2. ICE Has Not Shown That It Reasonably Foresees That Disclosure Will Harm an Interest Protected by the Attorney-Client Privilege

However, even for the portion of the first eight documents covered by the attorney-client privilege, ICE has not adequately shown that it reasonably foresees that harm will occur should the withheld records be disclosed. Because the D.C. Circuit has not yet taken up a case applying FOIA's foreseeable-harm requirement to withholdings made under the attorney-client privilege, courts in this district have grappled with what an agency must show to justify its withholdings. *See, e.g.*, *Blade v. U.S. Dep't of Labor*, No. 20-cv-2591, 2024 WL 4664453, at *32–34 (D.D.C. Nov. 4, 2024). Many have taken a flexible approach, recognizing that "'[t]he very context and purpose of [a] communication[] bearing on sensitive' legal matters might adequately support a claim of foreseeable harm." *Id.* at *34 (quoting *Reps. Comm.*, 3 F.4th at 372). But at a minimum, courts have recognized that it is not enough to simply establish that the privilege applies. *Id.* at *34–35. The agency still must "articulate both the nature of the harm" shielded by the privilege and "the link between the specified harm and specific information contained in the material withheld." *Reps. Comm.*, 3 F.4th at 369 (quotation omitted).

ICE has not met this burden. Its initial declaration does not discuss what harm would stem from disclosing its attorney-client material at all. ECF No. 18-3 ¶ 42. Instead, Director Pineiro merely asserts that ICE withheld documents under the privilege and that the "privilege protects the confidential communications between an attorney and his/her client relating to a legal matter for professional advice." *Id.*

ICE's supplemental declaration adds little. Its discussion of foreseeable harm would

appear to be exclusively tailored to the deliberative-process privilege. *See* ECF No. 22-2 ¶ 16. Even reading the supplemental declaration charitably, the only potentially relevant harm identified is the risk that disclosure of the withheld documents would chill future communications—ostensibly between agency officials and attorneys. *See id.* But this unadorned assertion of harm is the same as saying that the agency would be per se harmed by disclosing *any* attorney-client material. Such a broad, categorical claim will not do. *See Reps. Comm.*, 3 F.4th at 369–70.

ICE's *Vaughn* index is more of the same. It invokes the attorney-client privilege for eighteen documents and provides the same sentence-long representation about harm for each: "If these communications, as covered by the attorney-client privilege, were disclosed, this could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their legal counsel." *E.g.*, ECF No. 18-4 at 2. This categorical rationale is, again, insufficient without more. *See Reps. Comm.*, 3 F.4th at 369–70. So ICE has not borne its burden to justify its withholdings under the foreseeable-harm requirement.

\*   \*   \*

When an agency has failed to adequately justify its withholdings, courts will often grant it a "second chance" to avoid "the strong medicine of ordering immediate disclosure." *Ams. for Fair Treatment v. USPS*, 663 F. Supp. 3d 39, 62 (D.D.C. 2023) (citation and internal quotation marks omitted). The Court will do so here. If ICE wishes to withhold its materials, it must "provide a more detailed declaration or updated *Vaughn* index alongside a renewed motion for summary judgment." *Dalal*, 643 F. Supp. 3d at 62.

### IV. Conclusion

For all the above reasons, the Court will deny without prejudice ICE's Motion for Summary Judgment and Doe's Cross-Motion for Summary Judgment. A separate order will issue.

                                                                              /s/ Timothy J. Kelly  
                                                                              TIMOTHY J. KELLY  
Date: September 30, 2025                                United States District Judge